Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| MERCHANT ADVANCE, LLC<br><br>Demandante-Apelante<br><br>V.<br><br>CONCEPTOS CUISINE, LLC H/N/C PITIPUA; ÁNGEL D. MARRERO MARRERO Y FULANA DE TAL Y LA SLG ENTRE ELLOS<br><br>Demandado-Apelado | KLAN202000608 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil. Núm. SJ2019CV13064<br><br>Sobre:<br><br>Cobro de dinero |

Panel integrado por su presidenta, la Juez Brignoni Mártir, la Juez Grana Martínez y el Juez Rodríguez Flores.[1]

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de noviembre de 2024.

Merchant Advance, LLC, instó su recurso de apelación el 19 de agosto de 2020. Solicitó que revisáramos la *Sentencia* emitida el 7 de abril de 2020, y notificada el 17 de abril de 2020, por el Tribunal de Primera Instancia, Sala Superior de San Juan.[2] Mediante el referido dictamen, pronunciado en rebeldía, el foro primario declaró sin lugar la demanda del presente caso, tras concluir que, a la luz del derecho vigente en nuestra jurisdicción, no procedía una causa de acción de cobro de dinero respecto a un contrato de venta de bienes futuros consistentes en dinero.

El tribunal sentenciador coligió que el *Contrato para la Compraventa de Ingresos Futuros* objeto de la reclamación, no era un contrato de venta de bienes futuros, sino una transacción de préstamo con un pacto de intereses usureros y, por tanto, un

---

[1] Conforme a la Orden Administrativa TA-2020-167 el Juez Rodríguez Flores sustituyó al Juez Hernández Sánchez.
[2] La moción de reconsideración fue denegada mediante *Resolución* emitida el 20 de julio de 2020, y notificada el 21 de julio de 2021.

Número Identificador

SEN2024 _____

contrato con causa ilícita. Por ello, resolvió que, de conformidad con los Artículos 1649 al 1657 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 4591-4599,[3] la parte apelante solamente tenía derecho a recuperar de la parte apelada el 75% del capital adeudado, siendo el restante 25% adjudicado y recobrado por el Estado Libre Asociado de Puerto Rico.

La parte apelante argumentó ante nosotros que el Tribunal de Primera Instancia incidió al no reconocer la existencia de un contrato válido de venta de bienes futuros, que fue incumplido por la parte apelada.

La parte apelada, Conceptos Cuisine, LLC. h/n/c Pitipua no compareció, a pesar del término concedido para ello.[4] Por tanto, este Tribunal dio por perfeccionado el recurso para su consideración en los méritos, sin el beneficio de la comparecencia de la parte apelada.

En atención al recurso de apelación, el 22 de abril de 2021, emitimos nuestra *Sentencia* confirmando al Tribunal de Primera Instancia. Merchant Advance, LLC en desacuerdo con nuestro dictamen y luego que le fuera declarada no ha lugar una solicitud de reconsideración[5] recurrió vía *certiorari* ante el Tribunal Supremo de Puerto Rico. Luego de los correspondientes trámites, con fecha del 20 de octubre de 2023, el Tribunal Supremo emitió una *Sentencia.* El dictamen, en lo pertinente lee:

> Habiéndose expedido el recurso de epígrafe y examinada la Petición de *certiorari,* así como el Alegato de la parte peticionaria, se revoca la Sentencia del Tribunal de Apelaciones.
>
> Se devuelve el caso al Tribunal de Apelaciones para que atienda en los méritos el segundo señalamiento de error

---

[3] El Código Civil de Puerto Rico de 1930 fue derogado y sustituido mediante la Ley 55-2020, aprobada el 1 de junio de 2020, conocida como *Código Civil de Puerto Rico de 2020*. No obstante, el nuevo Código Civil tuvo vigencia al 28 de noviembre de 2020. Por tal motivo, haremos referencia a las disposiciones del ahora derogado Código Civil de 1930, según vigente a la fecha del dictamen apelado.

[4] Mediante resoluciones dictadas por este Tribunal el 25 de agosto de 2020 y el 25 de enero de 2021, se le concedió a la parte apelada término para presentar su alegato en oposición al recurso.

[5] Mediante *Resolución* del 20 de mayo de 2021, declaramos no ha lugar a la solicitud de reconsideración presentada el 4 de mayo de 2021 por Merchant Advance, LLC.

que consignó la parte peticionaria en el recurso de apelación que instó ante ese foro.

…

En atención a lo ordenado por el Tribunal Supremo, únicamente en cuanto al segundo señalamiento de error, procedemos. Comenzaremos por repasar los hechos procesales del caso.

## I.

El 20 de diciembre de 2019, Merchant Advance, LLC (Merchant) instó ante el Tribunal de Primera Instancia una demanda sobre cobro de dinero contra Conceptos Cuisine, LLC. h/n/c Pitipua (Conceptos); su presidente, Sr. Ángel D. Marrero Marrero (Sr. Marrero), la esposa Fulana de Tal y la sociedad legal de gananciales compuesta por estos.[6] En síntesis, Merchant adujo que el 25 de julio de 2019, suscribió con Conceptos un *Contrato para la Compraventa de Ingresos Futuros.* Mediante dicho contrato, Merchant le entregó a Conceptos $25,000.00, a cambio de $34,750.00 en ingresos futuros de Conceptos, a ser pagados a razón de $289.58 diarios.[7] El referido contrato, también estableció recargos y penalidades por incumplimiento. El Sr. Marrero firmó un documento de garantía personal a favor de Merchant.

Merchant alegó que Conceptos incumplió su obligación de pago de los plazos mensuales, tal cual acordado en el aludido contrato.[8] Por ello, reclamó la cantidad de $20,560.58 por los ingresos futuros no pagados, $5,000.00 de penalidad por el incumplimiento, $8,687.50 en honorarios de abogado pactados, así como las costas, los gastos del litigio y otros.

---

[6] Merchant es una compañía de responsabilidad limitada organizada bajo las leyes de Wyoming. El 30 de enero de 2020, prestó la fianza de no residente que exige la Regla 69.5 de Procedimiento Civil, 32 LPRA Ap. V, R. 69.5.

[7] Los pagos a favor de Merchant se efectuaban mediante débito automático de una cuenta de Conceptos.

[8] Conceptos canceló la autorización de débito automático.

La parte demandada fue emplazada personalmente el 27 de diciembre de 2019.

Ante la falta de alegación responsiva, el 30 de enero de 2020, Merchant presentó una *Solicitud de Anotación de Rebeldía y Sentencia.* Arguyó que era acreedor de una deuda válida, líquida, vencida y exigible, que estaba debidamente apoyada por la declaración jurada de deuda[9] y que no había sido pagada por el deudor. Por tanto, indicó que procedía que se dictara sentencia a su favor conforme a lo solicitado en la demanda.

Mediante *orden* emitida el 3 de febrero de 2020, y notificada el 5 de febrero de 2020, el Tribunal de Primera Instancia le anotó la rebeldía a la parte demandada. En dicha orden, además, el foro primario expresó que:

> … para el Tribunal estar en posición de dictar sentencia deberá la parte demandante presentar un memorando de derecho exponiendo de d[ó]nde surgen las bases legales del particular contrato entre las partes, por qué el Tribunal debe entender que el contrato de compra de ingreso futuro que firmaron las partes es legal al amparo del derecho vigente en Puerto Rico. Esto se ordena ya que a pesar de que las partes hayan contratado libre y voluntariamente, el Tribunal no puede avalar un contrato que vaya en contra de la ley, la moral o el orden público.

Véase, *Orden.* Apéndice del recurso, pág. 55A.

En su *Memorando de Derecho y Argumentación,* Merchant articuló que es una empresa que se dedica a proveer capital líquido a pequeños y medianos comerciantes, a cambio del interés propietario sobre ventas futuras, hasta tanto se reciba la cantidad de ingresos futuros pactados. A tales efectos, aseveró que el Capítulo 9, sobre Transacciones Garantizadas, de la *Ley de Transacciones Comerciales,* Ley Núm. 208 de 17 de agosto de 1995, según enmendada, 19 LPRA sec. 2211 *et seq.*, contenía el marco jurídico aplicable a la relación contractual entre las partes. En particular, señaló que el acuerdo en cuestión se ajustaba a la definición de

---

[9] Véase, *Declaración jurada,* suscrita el 26 de diciembre de 2019, por el Sr. Lestor Hernández Miranda, ejecutivo de Merchant.

*contrato de venta* de una transacción comercial, la cual "incluye tanto la venta actual de bienes al igual que un contrato para vender los bienes en el futuro". 19 LPRA sec. 2212(d)(11).

Merchant afirmó que en nuestro ordenamiento jurídico no existía una causa legal o de orden público que prohibiera pactar el *Contrato para la Compraventa de Ingresos Futuros.* Por lo anterior, razonó que el aludido contrato era uno válido, que la parte demandada había incumplido sus términos y que, por tanto, procedía acelerar el vencimiento de toda obligación, conforme pactado, y reclamar el pago de lo adeudado.

En la *Sentencia* apelada, el Tribunal de Primera Instancia reconoció la definición de *contrato de venta* que provee la citada disposición de la *Ley de Transacciones Comerciales,* 19 LPRA sec. 2212(d)(11). Sin embargo, relacionó dicha definición con la de *bienes* y sus exclusiones, provista en otro inciso de la misma sección. Específicamente, mencionó que *bienes* "significa todas las cosas movibles cuando se constituye una garantía mobiliaria". 19 LPRA sec. 2212(a)(44). Sin embargo, destacó que la referida sección, en lo pertinente, expresamente dispone que:

> (...) El término no incluye un programa de computadora integrado de bienes que son solamente el medio en el cual el programa está integrado. El **término tampoco incluye** cuentas, papel financiero, reclamaciones en daños y perjuicios comerciales, cuentas de depósito, documentos, bienes incorporales, instrumentos, inversiones, derechos sobre cartas de crédito, cartas de crédito, **dinero**, petróleo, gas u otros minerales antes de su extracción.

*Id.* Énfasis nuestro.

Por ello, el foro de primera instancia dedujo que, si bien era cierto que el contrato de compra de bienes futuros está contemplado en la *Ley de Transacciones Comerciales,* la misma ley claramente excluía el **dinero** de la definición de *bienes* que pudieran ser objeto de dicha contratación. Por tanto, concluyó que el *Contrato para la Compraventa de Ingresos Futuros* suscrito entre las partes no era un contrato de venta de bienes futuros; sino un contrato de préstamo,

puesto que una parte le entregó dinero a la otra con la condición de que se lo devolviera. Mencionó, además, que, al momento de la firma del referido contrato, las partes habían computado los intereses de la transacción.

Sin embargo, el tribunal sentenciador coligió que dichos intereses eran unos usureros, por exceder los límites establecidos en el Artículo 1649 del Código Civil de 1930, 31 LPRA sec. 4591, y, por tanto, se trataba de un contrato con causa ilícita.

En particular, resaltó que las referidas disposiciones legales expresan que en un préstamo por una cantidad mayor a los $3,000.00, como lo es la transacción del presente caso, los intereses no podían sobrepasar el 8% del principal. Así que, el foro *a quo* coligió que en un préstamo de $25,000.00, dicho 8% equivalía a $2,000.00.

El tribunal especificó que el contrato entre las partes establecía que el deudor pagaría $9,750.00 adicionales a la cantidad que recibió, lo que representaba el 39% de la cantidad adeudada. Ante ello, resolvió que, de conformidad con el mencionado Artículo 1649 del Código Civil de 1930, el peticionario únicamente podía cobrar el 75% del importe del capital adeudado, mientras que el 25% restante sería adjudicado y cobrado por el Estado Libre Asociado.

El foro primario explicó que Conceptos había realizado pagos a favor de Merchant ascendentes a $14,190.00. Así que le ordenó a Conceptos a pagar a Merchant la suma de $4,560.00 y, a favor del Estado Libre Asociado de Puerto Rico, la cantidad de $6,250.00. De tal manera, el Tribunal de Primera Instancia declaró sin lugar la demanda de cobro de dinero y ordenó el cierre y archivo del caso.

Denegada la solicitud de reconsideración[10], Merchant instó el presente recurso, en el que formuló los siguientes señalamientos de error:

> Primer error: Erró el TPI al determinar que el Contrato no es un contrato de compraventa de ingresos futuros si no (sic) que es un contrato de préstamo.

> Segundo error: Erró el TPI al determinar que el Contrato, de ser este uno de préstamo, establece intereses usureros y, en su consecuencia, limitar el recobro de Merchant al 75% de lo adeudado por los Apelados, sin intereses, y adjudicar al Estado Libre Asociado de Puerto Rico el 25% restante.

En primer lugar, Merchant arguye que el contrato no es uno de préstamo por dos (2) razones: (1) porque el contrato expresamente indica que no es de préstamo; y (2) Conceptos no tiene la obligación de devolver una cantidad específica de dinero, sino un ingreso futuro cuya cuantía está sujeta a una contingencia: la salud financiera de las operaciones del negocio. Su teoría se basa en la interpretación de la jurisdicción del estado de Nueva York, en donde la Corte Suprema ha indicado que para determinar si una transacción es una venta de bienes futuros o un préstamo, se debe examinar si la obligación de pago es absoluta o contingente a los ingresos del deudor. Si la obligación de pago es contingente a los ingresos del deudor, se trata de una venta de bienes futuros, a la que no le aplican los principios del préstamo y, por consiguiente, tampoco la prohibición de cobrar intereses que excedan el límite impuesto para ese tipo de transacción.[11]

---

[10] El 22 de mayo de 2020, el Tribunal Supremo emitió una *Resolución* mediante la cual dispuso que todo término que haya vencido o que venciera entre el 16 de marzo de 2020 y el 14 de julio de 2020, se extendería hasta el 15 de julio de 2020. *In re: Medidas Judiciales ante situación de emergencia de salud por el Covid-19,* EM-2020-12. La solicitud de reconsideración fue presentada el 15 de julio de 2020; esto fue, de manera oportuna. El Tribunal de Primera Instancia la denegó mediante *Resolución* emitida el 20 de julio de 2020, y notificada el 21 de julio de 2021.

[11] En apoyo a su contención, cita los siguientes casos resueltos por las cortes del estado de Nueva York: (1) *Rapid Capital Finance, LLC v. Natures Market Corp.*, 66 N.Y.S. 3d 797 (Sup. Ct. Westchester County 2017); (2) *IBIS Capital Group, LLC v. Four Paws Orlando LLC*, 2017 N.Y.Misc. LEXIS 884 (sup. Ct. Nasssau County 2017); (3) *Professional Merchant Advance Capital LLC v. Your Trading Room, LLC*, 2012 N.Y.Misc. LEXIS 6757 (Sup. Ct. Suffolk County 2012); (4) *Merchant Advance, LLC v. Tera K, LLC*, 2008 N.Y.Misc. LEXIS 10889 (Sup. Ct. New York County 2008); y (5) *Yellowstone Capital, LLC v. Central USA Wireless*, LLC, 2018 N.Y.Misc. LEXIS 2516.

Merchant asevera que la obligación de pago de Conceptos no consistía en la entrega de una cantidad específica de dinero – como generalmente ocurre en los contratos de préstamo – sino que la cantidad podía ser modificada a solicitud de Conceptos, basado en los ingresos generados por esta. Merchant puntualiza que asumió el riesgo de no recibir pago alguno si Conceptos dejaba de generar ingresos, siempre que esta no hubiere incurrido en incumplimiento. Por tanto, mantiene su planteamiento de que la transacción es un contrato de venta de bienes futuros.

En su segundo señalamiento de error, Merchant indicó que el contrato en cuestión expresa que este se regirá por las leyes del estado de Nueva York, jurisdicción que reconoce y avala ese tipo de transacción de venta de bienes futuros. En la alternativa, argumenta que, aún de asumirse que aplicaran las leyes de Puerto Rico, se trata de una transacción comercial realizada por personas jurídicas quienes, conforme al Artículo 12.09 de la *Ley General de Corporaciones*, *infra,* pueden convenir a cualquier tasa de interés, sin que las corporaciones puedan plantear la defensa de usura.

**II.**

**A.**

La *Ley de Transacciones Comerciales*, Ley Núm. 208 de 17 de agosto de 1995, según enmendada, 19 LPRA sec. 401 *et seq.*, se adoptó para simplificar, clarificar y modernizar el derecho que rige las transacciones comerciales, uniformar el Derecho entre las diversas jurisdicciones existentes y permitir la continua expansión de las prácticas comerciales. Al igual que ha ocurrido con las legislaciones de los 50 estados de Estados Unidos, la *Ley de Transacciones Comerciales,* se deriva de ciertos capítulos del *Uniform Commercial Code.* Esta ley especial, prevalece sobre las disposiciones del Código Civil, cuyas disposiciones aplican de modo supletorio. *Cruz Consulting v. El Legado et al.,* 191 DPR 499, 508-

509 (2014); seguido en *DLJ Mortgage v. SLG Santiago-Ortiz*, 202 DPR 950, 967 (2019).

La sección 9-102 del Capítulo 9 de la *Ley de Transacciones Comerciales*, define el *contrato de venta* como aquel que "incluye tanto la venta actual de bienes al igual que un contrato para vender los bienes en el futuro". 19 LPRA sec. 2212(d)(11).

Asimismo, la referida sección define el vocablo *bienes* de la siguiente manera:

> (44) *Bienes.* – Significa todas cosas movibles cuando se constituye una garantía mobiliaria. El término incluye (i) bienes inmuebles por su destino, (ii) madera en pie que será cortada y removida bajo una transferencia o contrato de venta, (iii) las crías por nacer de animales, (iv) cosechas cultivadas, creciendo o a sembrarse, aun si las cosechas producen en árboles, en una vid o en arbustos, y (v) casas prefabricadas. El termino incluye un programa de computadora integrado en los bienes y cualquier información de apoyo provista en relación con una transacción relacionada al programa si: (i) el programa está asociado con los bienes de tal modo que por costumbre se considera parte de los bienes, o (ii) haciéndose dueño de los bienes, una persona adquiere un derecho a usar el programa con relación a los bienes. El término no incluye un programa de computadora integrado en bienes que son solamente el medio en el cual el programa está integrado. El **término tampoco incluye** cuentas, papel financiero, reclamaciones en daños y perjuicios comerciales, cuentas de depósito, documentos, bienes incorporales, instrumentos, inversiones, derechos sobre cartas de crédito, cartas de crédito, **dinero**, petróleo, gas u otros minerales antes de su extracción.

19 LPRA 2212 (a)(44). (Énfasis nuestro).

Como se observa, la *Ley de Transacciones Comerciales* contempla en sus disposiciones el contrato para vender los bienes futuros. Sin embargo, la palabra *bienes* expresamente excluye de su definición al *dinero* como objeto de la contratación.

**B.**

Respecto a los factores a considerar al momento de determinar si una transacción es una venta de bienes futuros o un préstamo, la Corte Suprema de la jurisdicción de Nueva York ha indicado que:

> A useful and thorough analysis was recently provided by Justice Linda Jamison in *K9 Bytes, Inc. v. Arch Capital Funding, LLC,* 56 Misc.3d 807, 816, 57 N.YS.3d 625 (Sup.Ct., Westchester County 2017). That discussion explains that

"[i]n determining whether a transaction is a loan or not, the court must examine whether or not defendant is absolutely entitled to repayment under all circumstances. 'For a true loan it is essential to provide for repayment absolutely and at all events or that the principal in some way be secured as distinguished from being put in hazard' " (*K9 Bytes,* 56 Misc.3d at 816, 57 N.YS.3d 625, quoting *Rubenstein v. Small,* 273 App.Div. 102, 104 75 N.Y.S.2d 483 [1st Dept. 1947].)

"[T]here are certain factors that a court should look for to see if repayment is absolute or contingent. The first, and the one cited by each and every court that found that the transaction was not a loan, is whether or not there is a reconciliation provision in the agreement. The reconciliation provisions allow the merchant to seek an adjustment of the amounts being taken out of this account based on its cash flow (or lack thereof). If a merchant is doing poorly, the merchant will pay less, and will receive a refund of anything taken by the company exceeding the specific percentage (which often can also be adjusted downward). If the merchant is doing well, it will pay more than the daily amount to reach the specified percentage." (*id.*).

[...]

Another consideration in distinguishing between loans and purchases of receivables is that the loan has a finite term, with a definite point at which repayment is required. Whereas the period over which repayment will be made for a receivable purchase agreement is indeterminate (*see K9 Bytes, Inc. v. Arch Capital Funding, LLC,* 56 Misc.3d at 817, 57 N.YS.3d 625). Under a receivable purchase, the time in which the collection of a percentage of the merchant's sales proceeds will be complete is contingent upon the merchant generating sales and those sales resulting in the collection of revenue (*id.,* citing *IBIS Capital Group, LLC v. Four Paws Orlando LLC,* 2017 N.Y. Slip Op. 30477(U), 2017 WL 1065071 [Sup.Ct., Nassau County 2017]).

*Rapid Capital Finance, LLC V. Natures Market Corp.,* 66 N.Y.S.3d 797, 800-801 (2017).

En cuanto a la venta de bienes futuros y las leyes que prohíben la usura, dicha jurisdicción expresó:

In *Merchants Advance, LLC v. Tera K LLC,* the Court found an agreement for the purchase of future receivables and sales proceeds lacked "the necessary elements of a loan transaction" and was not subject to usury laws. (*Merchants Advance, LLC v. Tera K LLC T/A Tribeca Frank Carabetta,* 2008 N.Y. Misc. LEXIS 10889, [Sup. Ct. N.Y. Cty. 2008]).

*IBIS Capital Group, LLC v. Four Paws Orlando LLC*, 2017 N.Y.Misc. LEXIS 884 (Sup. Ct. Nasssau County 2017).

## C.

El Art. 1631 del Código Civil de 1930 define el contrato de préstamo como aquel mediante el cual "una de las partes entrega a

la otra ... dinero u otra cosa fungible, con [la] condición de volver otro tanto de la misma especie y calidad." 31 LPRA sec. 4511.[12]

Cuando se consuma el contrato de préstamo, nace la obligación del prestatario de devolver el dinero prestado en la fecha y lugar designado en el contrato, incluyendo el pago de los intereses devengados. Arts. 1124 y 1125 del Código Civil de 1930, 31 LPRA secs. 3174 y 3175.

Los intereses solo se deberán cuando haya pacto expreso al respecto, puesto que estos no se presumen. Art. 1646 del Código Civil de 1930, 31 LPRA sec. 4573.

Sobre el particular, existen normas dirigidas a evitar la práctica de cobrar un interés excesivo en un préstamo, conocida como usura. Los Artículos del 1649 al 1657 del Código Civil de 1930, 31 LPRA secs. 4591-4599, rigen el asunto en materia de usura.[13]

El Artículo 1644 del Código Civil de 1930, dispone que "[e]l que recibe en préstamo dinero u otra cosa fungible, adquiere su propiedad, y está obligado a devolver al acreedor otro tanto de la misma especie y calidad." 31 LPRA sec. 4571.

Por su parte, el Artículo 1649 del Código Civil de 1930, establece los parámetros en la fijación del interés legal sobre préstamos y otras obligaciones. Este dispone:

> A falta de un contrato previo escrito, el tipo de interés sobre préstamos o prórrogas de dinero o mercancías o sobre cualquier clase de obligación o contrato será de seis dólares ($6) anuales sobre cada cien dólares ($100) o sobre su equivalente en valor, y al mismo tipo por una suma mayor o menor, o por un período más largo o más corto; Disponiéndose, sin embargo, que no podrá fijarse un tipo de interés, por convenio especial, que sea mayor de nueve (9) dólares anuales sobre cada cien (100) dólares o sobre su equivalente en valor, cuando el capital objeto del préstamo o del convenio no exceda de $3,000 y de ocho (8) dólares anuales por cada cien (100) dólares, cuando pase de dicha cantidad. Dentro de los límites que por este título se fijan, será legal descontar letras y pagarés y otras obligaciones análogas.

31 LPRA sec. 4591.

---

[12] *Infra,* nota 3.
[13] *Id.*

Las normas dirigidas a evitar el cobro de intereses usureros o excesivos, que sobrepasan las tasas máximas establecidas por ley, así como también las sanciones económicas a imponerse a aquellos que pretenden gestionar dicho cobro en los tribunales, se establecen en el Artículo 1652 del Código Civil de 1930; a decir:

> Excepto como queda autorizado por la sec. 4593 de este título, ninguna persona podrá exigir o recibir, directa o indirectamente, dinero o mercancías, a un tipo de interés mayor por el préstamo o la prórroga del préstamo de algún dinero, que el tipo fijado por las secs. 4591 a 4599 de este título. Nada de lo contenido en estas secciones se interpretará en el sentido de prohibir la venta de efectos al contado a un precio más bajo que al crédito.

> Ningún contrato en el cual se reserve, acepte o asegure, o se convenga en reservar, aceptar o asegurar, un tipo de interés mayor que el que se permite por las secs. 4591 a 4599 de este título, podrá hacerse efectivo en un tribunal de Puerto Rico, sino por el importe del capital adeudado; y el tribunal deberá, además, disponer en la sentencia condenando al deudor al pago del capital que el acreedor recobre solamente de su deudor el setenta y cinco (75) por ciento de dicho capital y que el veinticinco (25) por ciento restante sea adjudicado y recobrado por el Estado Libre Asociado de Puerto Rico, quien podrá obtener mandamiento de ejecución, del mismo modo que el demandante, y sin preferencia sobre el montante adjudicado a éste, para hacer efectivo el veinticinco (25) por ciento así adjudicado.

> Los derechos definidos en esta sección no son renunciables.

31 LPRA sec. 4594.

Por consiguiente, los intereses pactados de forma usurera no hacen nula la obligación reclamada ni tampoco impiden su cobro por la vía judicial. Ahora bien, solamente podrá hacerse efectivo el importe del capital adeudado. *J.E. Candal & Co. v. Rivera*, 86 DPR 508, 517 (1962).

Así que, en su sentencia, además de condenar al deudor al pago del capital adeudado, el tribunal deberá disponer que el acreedor recobre únicamente el setenta y cinco por ciento (75%) de dicho capital, siendo el veinticinco por ciento (25%) restante adjudicado y recobrado por el Estado Libre Asociado. *Giráu v. González*, 73 DPR 410, 414-415 (1952).

Ahora bien, de conformidad con el Artículo 12.09 de la *Ley General de Corporaciones*, 14 LPRA sec. 3789, las corporaciones

pueden tomar dinero a préstamo a cualquier tasa de interés. El Artículo 12.09 lee:

> No obstante, cualquier limitación o penalidad establecida por ley, cualquier corporación que tome dinero a préstamo podrá contratar, incurrir en obligaciones y tomar dinero a préstamo, bien en el Estado Libre Asociado o en cualquier otro sitio, a cualquier tasa de interés que considere aceptable. Ningún deudor de esta clase, sea una corporación doméstica o una corporación foránea, podrá invocar estatuto alguno contra la usura en un procedimiento o en una acción legal establecida con el fin de obligar al pago o cumplimiento de cualquier obligación que surja de un préstamo de tal naturaleza, esté o no la obligación representada por cualquier bono, pagaré, contrato u otro escrito firmado, asumido o garantizado por tal deudor o cualquier sucesor o cesionario del mismo. En tal virtud, no se castigará como delito el exigir o recibir intereses a cualquier tasa así convenida ni podrá interponerse, por razón de usura, recurso alguno para recobrar cantidad alguna pagada en exceso del interés máximo fijado por ley o para hacer efectiva cualquier otra penalidad civil.

### III.

A los fines de atender el segundo señalamiento de error, es necesario reproducir lo resuelto en cuanto al primer error señalado.

En nuestra jurisdicción se reconoce el principio de la autonomía contractual entre las partes contratantes. Al amparo de esta, las partes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, la moral y el orden público. *S.L.G. Irizarry v. S.L.G. García*, 155 DPR 713, 724 (2001).

Este principio va atado al axioma jurídico de que —el mero consentimiento obliga— pues perfeccionado un contrato mediando el consentimiento de las partes, éstas se obligan desde ese momento no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que —según su naturaleza— sean conformes a la buena fe, al uso y a la ley. *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 772 (2001).

En el presente caso, las partes convinieron que Merchant le entregaba a Conceptos $25,000.00, a cambio de $34,750.00 en

ingresos futuros de Conceptos, a ser pagados a razón de $289.58 diarios.

Una lectura del referido contrato refleja que, la cantidad diaria de pago representa un porcentaje específico de los ingresos futuros de Conceptos (inciso 2 del contrato). Sin embargo, hay que señalar que el contrato no indica el ingreso de Conceptos ni el por ciento de ingreso que el pago de la obligación representa. Dicho renglón fue dejado en blanco. Tampoco expresa la cuantía de dicho porcentaje específico.[14]

Del mismo modo, el referido contrato en forma alguna estipula un periodo de tiempo para saldar la deuda y explica que, en caso del cese de las operaciones en el curso ordinario de los negocios de Conceptos, Merchant asumiría el riesgo de la pérdida (inciso 4 del contrato). Igualmente, en caso de una disminución en las ventas, Conceptos podía solicitar un ajuste en la cantidad diaria, siempre que no hubiera ocurrido un evento de incumplimiento. (inciso 2 del contrato). Además, el contrato expresamente indica que este no constituye un préstamo (inciso 4 del contrato).[15]

Por otro lado, el contrato indica que cancelar la autorización de débito directo de la cantidad diaria constituye uno de los eventos de incumplimiento que conlleva que la cantidad diaria estipulada se iguale al 100% de todos los ingresos futuros (incisos 3, 15 y 16 del contrato).[16]

Señala, además, que Merchant (el comprador) podrá ejercer y exigir sus derechos como acreedor asegurado al amparo de *la Ley de Transacciones Comerciales* (inciso 16.6 del contrato). Por último, el contrato indica que este será interpretado de acuerdo con las leyes del estado de Nueva York, y que cualquier demanda relacionada con

---

[14] Véase, *Agreement for the Purchase and Sale of Future Receipts,* Apéndice del recurso, págs. 4-18.
[15] *Id.*
[16] *Id.*

la interpretación, la ejecución o el incumplimiento del contrato, podrá ser resuelta en un tribunal del Estado Libre Asociado de Puerto Rico (inciso 20 del contrato).[17]

En nuestra jurisdicción, la *Ley de Transacciones Comerciales*, también reconoce la venta de ingresos futuros. Ahora bien, expresamente prohíbe que el **dinero** sea un bien objeto de una transacción de venta futura. Se trata, pues, de un acto contrario a la ley vigente en esta jurisdicción que no puede producir los efectos jurídicos que pretende Merchant.

Entonces, tal y como resolvió el foro primario, solo restaba interpretar el contenido del contrato suscrito entre las partes para aplicar las normas de derecho correspondientes. Recuérdese que estamos ante un contrato en el cual Conceptos recibió $25,000.00 de Merchant, con la condición de devolver $34,750.00. Ciertamente, ello constituyó un contrato de préstamo.

No obstante -y sopesando el segundo señalamiento de error- el contrato estipula una transacción realizada entre personas jurídicas las cuales, conforme al Artículo 12.09 de la *Ley General de Corporaciones*, supra, pueden convenir cualquier tasa de interés, sin que las corporaciones puedan plantear la defensa de usura. es decir, las corporaciones pueden tomar dinero a préstamo a cualquier tasa de interés.

En el presente caso, a tenor con los términos de la contratación, Conceptos tenía que devolver $9,750.00 adicionales a la cantidad que recibió de Merchant. Es decir, el 39% de la cantidad adeudada. De conformidad con el aludido artículo de la *Ley General*

---

[17] La disposición en inglés del inciso 20 indica que se interpretará de acuerdo con las leyes del estado de Nueva York; mientras, que la disposición en español indica que se interpretará de acuerdo con las leyes del Estado Libre Asociado de Puerto Rico. En cuanto al foro adecuado para instar una causa de acción, la versión en inglés dice que puede ser un tribunal del Estado Libre Asociado de Puerto Rico, y la versión en español expresa que puede ser en un tribunal del estado de Nueva York. No obstante, el propio contrato establece que, en la eventualidad de inconsistencias entre ambas versiones, prevalecerán las disposiciones en inglés (inciso 29 del contrato). Véase, *Agreement for the Purchase and Sale of Future Receipts,* Apéndice del recurso, págs, 4-18.

*de Corporaciones,* la tasa de interés convenida es totalmente lícita. La transacción entre Merchant y Conceptos es un contrato de préstamo comercial a la que no le es oponible la prohibición de usura.

Por consiguiente, erró el foro primario al resolver que el contrato suscrito entre las partes es uno con causa ilícita por razón de usura y declarar no ha lugar a la demanda. En virtud de lo anterior, se modifica la sentencia apelada, de la siguiente manera. Se **confirma** que la transacción comercial entre Merchant Advance LLC. y Conceptos Cuisine LLC. fue un contrato de préstamo; y se **revoca** la aplicación de la prohibición de usura en el contrato de préstamo entre Merchant Advance LLC. y Conceptos Cuisine LLC. Se reinstala la demanda y se ordena la continuación de los procedimientos ante el TPI.

**IV.**

Por los fundamentos que anteceden, se modifica la *Sentencia* apelada, de la siguiente manera. Se **confirma** que la transacción comercial entre Merchant Advance LLC. y Conceptos Cuisine LLC. fue un contrato de préstamo; y se **revoca** la aplicación de la prohibición de usura en el contrato de préstamo entre Merchant Advance LLC. y Conceptos Cuisine LLC. Se reinstala la demanda y se ordena la continuación de los procedimientos ante el Tribunal de Primera Instancia de conformidad con lo resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones