OPINION OF THE COURT Terry Jane Ruderman, J. Plaintiff Rapid Capital Finance, LLC is a Florida LLC. On November 30, 2016, plaintiff and defendants entered into an agreement denominated a merchant agreement, which provided for plaintiffs purchase from defendant Natures Market Corp. of future receivables with a face value of $38,100, for the purchase price of $30,000. In exchange for plaintiffs payment of the purchase price, Natures Market would turn over to plaintiff future receivables, through daily debits of $152 from Natures Market’s bank account, which, according to the agreement, amounted to 9.1% of Natures Market’s average daily sales. The agreement defines events of default, and provides that if a defined default occurs, the full uncollected purchase amount would be immediately due and payable to plaintiff, along with costs and attorney’s fees. Individual defendant Gob-ran Nagi personally guaranteed the obligation. Plaintiff’s complaint alleges that defendants defaulted by blocking collection of further receivables, leaving a balance due of $30,288, along with interest, costs, and attorney’s fees. It sues for breach of contract and guarantee, unjust enrichment, and attorney’s fees. Defendants’ answer asserts as a defense that the merchant agreement is unenforceable because it is actually a loan agreement rather than an agreement to purchase receivables, and as such, it is criminally usurious because calculations based on the agreement’s repayment provisions establish that the agreement actually imposes an annual interest rate of 127%. The counterclaim, on the same grounds, seeks a declaratory judgment so stating. Plaintiff now moves pursuant to CPLR 3211 to dismiss the affirmative defenses claiming usury and the counterclaim to the same effect, and pursuant to CPLR 3024 (b) to strike allegedly scandalous and irrelevant allegations from defendants’ answer. Analysis Initially, the branch of plaintiff’s motion seeking to strike scandalous and irrelevant allegations from defendants’ answer pursuant to CPLR 3024 (b) is denied. The contention that the master agreement is a loan disguised as a purchase agreement, and, as a loan, is usurious, is a legitimate legal position; it is neither scandalous nor irrelevant. In moving to dismiss, CPLR 3211 (a) (1) and (7) may be used to seek dismissal of the counterclaim, while a party may move to dismiss a defense pursuant to CPLR 3211 (b) “on the ground that a defense is not stated or has no merit.” “In reviewing a motion to dismiss an affirmative defense, the court must liberally construe the pleadings in favor of the party asserting the defense and give that party the benefit of every reasonable inference” (Bank of N.Y. v Penalver, 125 AD3d 796, 797 [2d Dept 2015] [internal quotation marks and citations omitted]). “[I]f there is any doubt as to the availability of a defense, it should not be dismissed” (Chestnut Realty Corp. v Kaminski, 95 AD3d 1254, 1255 [2d Dept 2012], quoting Fireman’s Fund Ins. Co. v Farrell, 57 AD3d 721, 723 [2d Dept 2008]). Dismissal may be warranted under CPLR 3211 (a) (1) “if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law” (Leon v Martinez, 84 NY2d 83, 88 [1994]). The question is whether the terms of the merchant agreement conclusively establish the invalidity of the claim that the transaction was actually a loan, on terms that were criminally usurious. Plaintiff relies, for its conclusive documentary evidence, on the merchant agreement itself, arguing that by its terms the agreement establishes as a matter of law that the transaction was not a loan, and therefore is not subject to the usury laws. “Usury laws apply only to loans or forbearances, not investments. If the transaction is not a loan, there can be no usury, however unconscionable the contract may be” (Seidel v 18 E. 17th St. Owners, 79 NY2d 735, 744 [1992] [citations and internal quotation marks omitted]). It is not dispositive that the agreement is not called a loan, and that it affirmatively states that it is not a loan. In Qualis Care v Everglades Regional Med. Ctr. (232 AD2d 323, 324 [1st Dept 1996]), the Court held that there was a question of fact as to whether an “agreement to ‘purchase’ defendant’s accounts receivable was in fact a loan, disguised as a purchase.” By calling a transaction a merchant agreement, a plaintiff “does not shield it from a judicial determination that such agreement contemplates a criminally usurious transaction” (see Pearl Capital Rivis Ventures, LLC v RDN Constr., Inc., 54 Misc 3d 470, 471 [Sup Ct, Westchester County 2016]). Since it is legally possible that a purported agreement to purchase receivables may in fact be a loan, the absence of a promissory note does not preclude the possibility that a merchant agreement is a loan. “Purchases and sales of future receivables and sales proceeds are common commercial transactions expressly contemplated by the Uniform Commercial Code” (IBIS Capital Group, LLC v Four Paws Orlando LLC, 2017 NY Slip Op 30477[U], *3 [Sup Ct, Nassau County 2017]). A number of trial-level decisions have considered and rejected arguments that agreements to purchase receivables were loans (see e.g. IBIS Capital Group, LLC v Four Paws Orlando LLC, 2017 NY Slip Op 30477[U] [Sup Ct, Nassau County 2017]; Merchant Cash & Capital, LLC v Yehowa Med. Servs., Inc., 2016 NY Slip Op 31590[U], *5 [Sup Ct, Nassau County 2016]; Merchant Cash & Capital, LLC v Ethnicity Inc., 2016 NY Slip Op 32593[U], *3-4 [Sup Ct, Nassau County 2016]; Professional Merchant Advance Capital, LLC v Your Trading Room, LLC, 2012 NY Slip Op 33785[U], *6 [Sup Ct, Suffolk County 2012]). Other decisions have held those merchants’ arguments to be valid, or at least possibly viable (see e.g. Merchant Funding Servs., LLC v Volunteer Pharm. Inc., 55 Misc 3d 316 [Sup Ct, Westchester County 2016]). In Professional Merchant Advance Capital, LLC v C Care Servs., LLC (2015 WL 4392081, *3-4, 2015 US Dist LEXIS 92035, *11 [SD NY, July 15, 2015, No. 13-cv-6562 (RJS)]), the court “reserve [d] ruling on damages pending a supplemental submission from Plaintiff as to whether the Agreement—though nominally structured as a sale of accounts receivable—in fact violate [d] New York’s criminal usury law.” It noted that “[l]ooking ‘beyond the form of [the] transaction and examining] its substance,’ it could be argued that the Agreement, which obligates Defendants to make a minimum weekly payment irrespective of C Care’s accounts receivable and subjects Plaintiff to no downside whatsoever aside from the risk that the borrower will fail to make the required payments, is in fact a loan” (2015 WL 4392081, *4, 2015 US Dist LEXIS 92035, *13). A useful and thorough analysis was recently provided by Justice Linda Jamieson in K9 Bytes, Inc. v Arch Capital Funding, LLC (56 Misc 3d 807, 816 [Sup Ct, Westchester County 2017]). That discussion explains that “[i]n determining whether a transaction is a loan or not, the court must examine whether or not defendant is absolutely entitled to repayment under all circumstances. ‘For a true loan it is essential to provide for repayment absolutely and at all events or that the principal in some way be secured as distinguished from being put in hazard’ ”(K9 Bytes, 56 Misc 3d at 816, quoting Rubenstein v Small, 273 App Div 102, 104 [1st Dept 1947]). “[T]here are certain factors that a court should look for to see if repayment is absolute or contingent. The first, and the one cited by each and every court that found that the transaction was not a loan, is whether or not there is a reconciliation provision in the agreement. The reconciliation provisions allow the merchant to seek an adjustment of the amounts being taken out of its account based on its cash flow (or lack thereof). If a merchant is doing poorly, the merchant will pay less, and will receive a refund of anything taken by the company exceeding the specified percentage (which often can also be adjusted downward). If the merchant is doing well, it will pay more than the daily amount to reach the specified percentage” (id. at 816-817). Here, the parties’ agreement contains such a reconciliation provision, which provides that “RCF will debit the Specific Amount each period and upon receipt of the merchant’s monthly bank statements to reconcile the merchant’s account by either crediting or debiting the difference from or back to the merchant’s bank account so that the amount debited per month equals the Specified Percentage. It is solely the merchant’s responsibility to send all of their bank statements and a missed month forfeits all future reconciliations” (plaintiff’s exhibit A at 1). Defendants argue that although the parties’ agreement includes the foregoing reconciliation provision, that provision may not be relied on to establish that repayment is contingent rather than absolute, because defendants had no control or ability to enforce plaintiff’s compliance with the reconciliation procedure. That is, unlike in K9 Bytes, the reconciliation provision here did not “allow the merchant to seek an adjustment of the amounts being taken out of its account based on its cash flow (or lack thereof) . . . [i]f [it] is doing poorly” (see 56 Misc 3d at 817 [emphasis added]). Indeed, defendants suggest, a request by defendants for reconciliation would violate the material adverse change covenant, which would constitute a default. Defendants’ argument must fail. While the reconciliation provision here may not have specifically provided a mechanism for defendant to affirmatively seek an adjustment, it imposes on plaintiff an obligation to reconcile defendant’s account so that the amount debited per month would equal the specified percentage; the only proviso on that obligation is that it only continues as long as defendant continues to supply its monthly bank statements as contemplated in the agreement. Therefore, if the merchant’s receipts decreased, after the monthly reconciliation defendant would be entitled to a downward adjustment, so that the amount plaintiff ultimately debited would be limited to 9.1% of the merchant’s receipts. Defendants protest that other provisions of the agreement ensured that plaintiff would never adjust down its monthly debited sum, in that the agreement gives plaintiff the ability to investigate the merchant’s finances in the event its monthly receipts are low. However, these protective mechanisms do not negate the reconciliation mechanism; they merely protect plaintiff from the types of trickery illustrated by examples offered in defendants’ submissions, such as the possibility that the merchant could hide its receipts by depositing them elsewhere. Another consideration in distinguishing between loans and purchases of receivables is that a loan has a finite term, with a definite point at which repayment is required, whereas the period over which repayment will be made for a receivables purchase agreement is indeterminate (see K9 Bytes, Inc. v Arch Capital Funding, LLC, 56 Misc 3d at 817). Under a receivables purchase, the time in which the collection of a percentage of the merchant’s sales proceeds will be complete is contingent upon the merchant generating sales and those sales resulting, in the collection of revenue (id., citing IBIS Capital Group, LLC v Four Paws Orlando LLC, 2017 NY Slip Op 30477[U] [Sup Ct, Nassau County 2017]). Defendants also point to their execution of a security agreement giving plaintiff a security interest in all Natures Market’s accounts, to argue that the transaction must be a loan since “[flor a true loan it is essential to provide for repayment absolutely and at all events or that the principal in some way be secured as distinguished from being put in hazard” (K9 Bytes, Inc. v Arch Capital Funding, LLC, 56 Misc 3d at 816, quoting Rubenstein v Small, 273 App Div 102, 104 [1st Dept 1947] [internal quotation marks omitted and emphasis added]). However, this protection of plaintiffs ultimate ability to collect its full entitlement is insufficient, alone, to establish that this nominal purchase agreement is, instead, actually a loan. Because review of the terms of the agreement establishes as a matter of law that it is a purchase agreement rather than a loan, defendants’ usury defense has no merit, and must be dismissed pursuant to CPLR 3211 (b). The counterclaim seeking a declaratory judgment on the same ground must be dismissed for the same reason. Based upon the foregoing, it is hereby ordered that plaintiff’s motion is granted to the extent that the defense and counterclaim based on the claim of usury are dismissed.