## CFG Merchant Solutions, LLC v Tawa Roti Dhaulagiri Food, Corp

2024 NY Slip Op 34470(U)

December 22, 2024

Supreme Court, New York County

Docket Number: Index No. 157288/2021

Judge: Alexander M. Tisch

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  PART 18

--------------------------------------------------------------------X

CFG MERCHANT SOLUTIONS, LLC,

                              Plaintiff,

                 - v -

TAWA ROTI DHAULAGIRI FOOD, CORP,
MOHAMMAD AMER

                          Defendants.

--------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 157288/2021 |
| **MOTION DATE** | 12/27/2021 |
| **MOTION SEQ. NO.** | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34
were read on this motion to/for                JUDGMENT - SUMMARY

In this action, plaintiff CFG Merchant Solutions, LLC (CFG or Buyer) seeks $43,705.00 plus interest, costs, disbursements and attorneys' fees in damages for breach of contract (First Cause of Action); breach of a personal guarantee (Second Cause of Action), and for attorneys' fees  (Third Cause of Action) against defendants Tawa Roti Dhaulagiri Food, Corp d/b/a Tawa Roti Dhaulagiri Food (Tawa or Seller) and Mohammad Amer (Amer or Guarantor) (*see* Verified Summons and Complaint, NYSCEF Doc. No. 1).

According to the complaint, the parties entered into an agreement on or about December 10, 2020, for a Merchant Cash Advance (MCA) transaction.  Plaintiff agreed to pay $36,500 for $51,830 of Tawa's future account receivables.  According to the agreement, CFG was to automatically debit a specific amount of money (the Daily Amount) from a designated Tawa

[* 1]

bank account each day (Authorization Agreement for Automated Clearing House Transactions, NYSCEF Doc. No. 2 at 12). The Daily Amount was intended to represent 15 percent of Tawa's anticipated daily sales. The debiting was to continue each business day until CFG received the full amount under the agreement (Agreement, NYSCEF Doc. No. 20). Simultaneously with the agreement, Amer executed a personal guaranty for Tawa's performance of the agreement (Personal Guaranty of Performance, NYSCEF Doc. No. 20, 10-11). CFG claims it received $10,960.00 from Tawa but received no additional money as of February of 2021, leaving a balance of $40,870.00, together with a Default Fee of $2,500 and a UCC Filing Fee in the amount of $195, as well as $140 in other fees, for a total of $43,705.00.

Now, CFG moves for summary judgment pursuant to CPLR 3212 and 3123. Defendants oppose and cross move for summary judgment pursuant to CPLR 3212, seeking dismissal of the complaint on the grounds that the agreement is not for the purchase and sale of receivables, but an unenforceable agreement for a loan charging criminally usurious interest.

## I.    STANDARD

The standards for summary judgment are well settled. Summary judgment is a drastic remedy which will be granted only when the party seeking summary judgment has established there are no triable issues of fact (*see* CPLR 3212 [b]; *Alvarez v Prospect Hosp.*, 68 NY2d 329 [1986]; *Sillman v Twentieth Century-Fox Film Corporation*, 3 NY2d 395 [1957]). To prevail, the party seeking summary judgment must make a *prima facie* showing of entitlement to judgment as a matter of law tendering evidentiary proof in admissible form, which may include deposition transcripts and other proof annexed to an attorney's affirmation (*see Alvarez v Prospect Hosp., supra; Olan v Farrell Lines*, 64 NY2d 1092 [1985]; *Zuckerman v City of New York*, 49 NY2d 557 [1980]). Absent a sufficient showing, the court should deny the motion

[* 2]

without regard to the strength of the opposing papers (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851 [1985]).

Once the initial showing has been made, the burden shifts to the party opposing the motion for summary judgment to rebut the *prima facie* showing by producing evidentiary proof in admissible form sufficient to require a trial of material issues of fact (*see Kaufman v Silver*, 90 NY2d 204, 208 [1997]). The court must carefully scrutinize the motion papers in a light most favorable to the party opposing the motion and must give that party the benefit of every favorable inference (*see Negri v Stop & Shop*, 65 NY2d 625 [1985]). Summary judgment should be denied where there is any doubt as to the existence of a triable issue of fact (*see Rotuba Extruders, v Ceppos*, 46 NY2d 223, 231 [1978]). Bald, conclusory assertions or speculation and "[a] shadowy semblance of an issue" are insufficient to defeat a summary judgment motion (*S.J. Capalin Assoc. v Globe Mfg. Corp.*, 34 NY2d 338, 341 [1974]; *see Zuckerman v City of New York, supra; Ehrlich v American Moninger Greenhouse Mfg. Corp.*, 26 NY2d 255, 259 [1970]). Lastly, "[a] motion for summary judgment should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility" (*Ruiz v Griffin*, 71 AD3d 1112 [2d Dept 2010], quoting *Scott v Long Is. Power Auth.*, 294 AD2d 348 [2d Dept 2002]).

## II.    NOTICE TO ADMIT

The Court turns first to CFG's argument it is entitled to summary judgment against the defendants pursuant to CPLR 3123 due to their failure to reply to CFG's Notice to Admit, which was served on or about September 9, 2021 (NYSCEF Doc. No. 13).

A Notice to Admit must be drafted to conform with the permissible scope of matters and materials subject to admission (see *Village of Malone v Stone Mtn. Prime, LLC*, 204 AD3d 1148,

3

[* 3]

1150 [3d Dept 2022]). A notice to admit is improper where it seeks "admissions of disputed issues of fact, disputed matters that go to the heart of the controversy and documents outside the knowledge of [the opposing party]" (*id.*; *Fetahu v New Jersey Tr. Corp.*, 167 AD3d 514, 515 [1st Dept 2018] [request properly denied where it sought admissions "of material issues or ultimate or conclusory facts"] [internal citations omitted]). It is well established a party cannot make a *prima facie* case using only CPLR 3123 admissions given the prohibition on admissions concerning the ultimate issue or fact in the case, as in *CFG Merchant Solutions, LLC v Valentis Security Services, Inc.*, which held that "[a] motion court on summary judgment may properly decline to treat as admitted the facts set forth in an improper notice" to admit which plaintiff was seeking to use "for the improper purpose of resolving ultimate issues in the case" even where the nonmovant failed to respond timely to the notice (76 Misc 3d 1212 [A], *2 [Sup Ct, NY County 2022 (Lebovits, J.)]).

Here, while the notice seeks admission of some uncontroversial facts, such as the execution of the Agreement, the existence of a Personal Guaranty of Performance and defendants' agreement to the debiting of a Daily Amount from their bank account, plaintiff also seeks admissions that go to the heart of the dispute. There remains controversy about the validity of the parties' agreement and its characterization as an MCA transaction rather than a loan (*Fetahu*, 167 AD3d at 515 [1st Dept 2018]). Therefore, this Court declines to treat the statements in the notice as admitted, even though defendants neglected to timely respond (*Meadowbrook-Richman, Inc. v Cicchiello*, 273 AD2d 6, 6 [1st Dept 2000]; *Village of Malone*, 204 AD3d at 1150 [3d Dept 2022]). Accordingly, this argument fails.

[* 4]

### III.     PLAINTIFF CFG'S MOTION FOR SUMMARY JUDGMENT

To establish a *prima facie* case on a breach of contract claim, a plaintiff must show proof of a contract, plaintiff's performance under the contract, defendant's breach thereof, and resulting damages (see *Belle Light. LLC v Artisan Constr. Partners LLC*, 178 AD3d 605, 606 [1st Dept 2019]; *Harris v Seward Park Hous. Corp.*, 79 AD3d 425, 426 [1st Dept 2010]).  In support of its motion, CFG submits the affidavit of Laura Cinnella, its Manager of Collections, who states that payments were initially made by Tawa pursuant to the agreement, but payment ceased starting on or about February 10, 2021, amounting to a breach of contract (*id.*, ¶ 15).

However, the record contains no documentary proof in proper form of CFG's performance.  Plaintiff submits an email with the subject line "[Cust Out Wire Advice -eMail]" from First Republic Bank with information as purported proof of the payment under the agreement (NYSCEF Doc. No. 21).  This evidence is deficient because the email is not authenticated.  The email is not mentioned in the Cinnella affidavit, and while it is mentioned in the attorney affirmation of Jason Gang, Esq., (NYSCEF Doc. No. 17, ¶ 6) Gang does not and cannot authenticate the document as a business record (CPLR § 4518).  Accordingly, plaintiff fails to make a *prima facie* case for summary judgment.

### IV.     DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

Defendants oppose plaintiff's motion and cross-move for summary judgment, arguing the agreement is not a valid agreement to purchase future receivables but rather an unenforceable loan with a usurious and prohibited 69 percent interest rate and a merely hypothetical reconciliation provision.

New York Penal Law provides that charging interest on a loan or forbearance greater than 25 percent per year, or the equivalent rate for a shorter or longer period, is usurious and a

[* 5]

felony (Penal Law § 190.40). Usurious contracts are not enforceable (*Adar Bays, LLC v GeneSYS ID, Inc.*, 37 NY3d 320, 326 [2021]). "To successfully raise the defense of usury, a debtor must allege and prove by clear and convincing evidence that a loan or forbearance of money, requiring interest in violation of a usury statute, was charged by the holder or payee with the intent to take interest in excess of the legal rate" (*Blue Wolf Capital Fund II, L.P. v Am. Stevedoring Inc.*, 105 AD3d 178, 183 [1st Dept 2013]). Further, "when the terms of the agreement are in issue, and the evidence is conflicting, the lender is entitled to a presumption that he did not make a loan at a usurious rate" (*Giventer v Arnow*, 37 NY2d 305 [1975]). Here, however, the terms of the agreement are not in dispute. The parties disagree about their implication and the classification of the transaction contemplated by those terms.

To determine the true nature of the agreement, the agreement "must be considered in its totality and judged by its real character, rather than by the name, color, or form which the parties have seen fit to give it" (see *LG Funding, LLC v United Senior Props. of Olathe, LLC*, 181 AD3d 664, 665 [2d Dept 2020] [internal citations and quotation mark omitted]). In other words, while the agreement proclaims itself a contract for the sale of receivables, "substance- not form-controls. . . . [P]arties who are not directly exposed to market risk in the value of the underlying assets are likely to be lenders, not investors. Additionally, context, such as whether a party applied to the other for a loan or had outstanding, separate transactions, helps to distinguish between intent to borrow and intent to engage in a joint transaction or exchange money for some other reason" (*Adar Bays, LLC v GeneSYS ID, Inc*, 37 NY3d 320, 334 [2021], internal citations omitted). Courts also consider whether the seller's "obligation to repay was absolute and not contingent on its actual accounts receivable" or whether the buyer assumed the risk of lower-than-expected revenues, with assumption of risk indicating a true purchase and a seller's absolute

**6**

obligation to pay weighing in favor of deeming the transaction a loan (*LG Funding*, 181 AD3d at 666). To decide whether repayment is absolute or contingent, the court considers: "(1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy" (*LG Funding, LLC*, 181 AD3d at 666; see also *Davis v Richmond Capital Group, LLC*, 194 AD3d 516, 517 [1st Dept 2021]). Plaintiff points out that the agreement has a mandatory reconciliation provision, an indefinite term, and does not name the defendants' bankruptcy as a default event.

## A. Context of the Transaction

In *Adar Bays, LLC v GeneSYS ID, Inc.*, the Court of Appeals considered objective indicia of the parties' intent to "distinguish between intent to borrow and intent to engage in a joint transaction or exchange money for some other reason" (37 NY3d at 334-336). For example, if "a party applied to the other for a loan or had outstanding, separate transactions," that context could weigh towards finding there was an "intent to borrow" rather than "to engage in a joint transaction" thus classifying the transaction as a loan (*id.* at 334). Here, CFG's affiant admitted that, on December 10, 2020, CFG paid Tawa $15,600 corresponding to "the Purchase Price of $36,500.00 minus the agreed upon applicable fees and a balance on a previously secured agreement, thus fulfilling its obligation on the Agreement" (NYSCEF Doc. No. 16 [Cinnella aff], ¶14 [emphasis and citations omitted]; see also NYSCEF Doc. No. 2 at 14 [Balance Transfer Form] "Date of previous secured agreement: 8/26/2020" and "Remaining RTR balance: $ 20,192.00"). This separate outstanding balance factored into the agreement weighs towards viewing the transaction as a loan.

7

## B. Reconciliation Provision

A reconciliation provision allows the selling merchant to seek adjustments of the amount remitted daily to the purchaser when the contractual daily amount due no longer represents the agreed-upon percentage of the merchant's daily sales (see *K9 Bytes, Inc. v Arch Capital Funding, LLC*, 56 Misc 3d 807, 817 [Sup Ct, Westchester Cty, May 4, 2017]). If there is no reconciliation provision, the agreement may be considered a loan (*id.*). Where such a provision is included, courts must consider whether adjustments are discretionary or illusory.

This agreement contains a reconciliation provision allowing adjustments in the Daily Amount "to more closely reflect the Seller's actual Future Receipts" (Agreement, ¶8). Specifically, the Agreement's reconciliation clause provides:

> "8. Seller May Request Changes to the Daily Amount (IMPORTANT PROTECTION FOR SELLER): The initial Daily Amount is intended to represent the specified Purchased Percentage of Seller's daily Future Receipts. . . . [O]nce each calendar month, Seller may request that Buyer adjust the Daily Amount to more closely reflect the Seller's actual Future Receipts times the specified Purchased Percentage. Seller agrees to provide Buyer any information requested by Buyer to assist in this reconciliation. Upon reasonable verification of such information, Buyer shall adjust the Daily Amount on a going-forward basis to more closely reflect the Seller's actual Future Receipts times the specified Purchased Percentage."

Defendants argue the provision is a sham and impossible to utilize as there is no limit on what information CFG could request. During discovery, defendants demanded that CFG document whether it had ever received any request for or ever implemented a reconciliation. They contend they received no response to the demand and there is no reason to believe CFG has ever implemented a reconciliation with any debtor. Further, Tawa asserts the reconciliation provision was illusory because it had no time frame for implementation, no framework for calculating what a new Daily Amount should be, and provided for emailing notice "only upon the prior written

8

[* 8]

consent of [CFG]" with the only other permissible notice by certified mail, return receipt requested, which was "effective only upon receipt," allowing CFG to avoid any reconciliation by simply leaving the certified mail unclaimed (Amer aff, ¶14 quoting Agreement, ¶ 21).

Defendants further argue there were disincentives to requesting a reconciliation as a request for reconciliation could trigger a grab by CFG for all of Tawa's sources of income, as the agreement allowed buyer to instruct seller's debtors "to make payment or otherwise render performance to or for the benefit of Buyer" instead of Tawa (Agreement, ¶ 16). Further, despite any reconciliation, the agreement allowed CFG to restore the original Daily Amount if Tawa failed to provide further financial information within five days of CFG's demand (Agreement, ¶ 9). Finally, defendants contend the reconciliation contemplated by the agreement would be worthless, as Tawa may only seek reconciliation once per calendar month. The high Daily Amount contemplated in the agreement means Tawa's need for reconciliation could be urgent. Defendants also point out that, if sales were lower, even a reduced daily amount could still leave it unable to pay its business expenses since the Daily Amount was calculated from Tawa's gross income before expenses.

Defendants' concerns are largely speculative, as they hinge on how CFG might behave. Further, defendants do not present any admissible evidence that Tawa ever requested a reconciliation. Defendants have not shown the reconciliation term was illusory, so this element weighs in favor of the agreement being a sale of receivables.

### C. Term of the Transaction

The next factor of the test is whether the agreement has a finite or infinite term for payment of receivables to plaintiff (*LG Funding, LLC*, 181 AD3d at 666). On its face, the term of the agreement is not finite. There is no end date or sunset provision as to when Tawa is to

9

[* 9]

finish making payments. The agreement implies the payments would be extended if the reconciliation provision is invoked. The non-finite term weighs in favor of this agreement being a purchase of future receivables.

### D. Recourse

The third and final prong of the test is whether CFG has recourse in the event of Tawa's bankruptcy, with a lack of recourse indicating CFG took on the risk of purchasing receivables. The agreement between CFG and Tawa states: "If the Amount Sold is never remitted because Seller's business went bankrupt or otherwise ceased operations in the ordinary course of business, and Seller has not breached this Agreement, Seller would not owe anything to Buyer and would not be in breach of or default under this Agreement" (Agreement, ¶ 7). As part of the same transaction, and pursuant to the agreement between CFG and Tawa, Amer signed a personal guaranty to CFG, guaranteeing all obligations of Tawa "irrevocably, absolutely and unconditionally" (Guaranty, NYSCEF Doc. No. 20, Recital B). However, since Tawa's, and thus Amer's, obligations would terminate if Tawa "went bankrupt or otherwise ceased operations," the guaranty does not eliminate CFG's risk (*see Pirs Capital, LLC v D & M Truck, Tire & Trailer Repair Inc.*, 69 Misc 3d 457, 463 [Sup Ct, New York Cty, Aug. 17, 2020]; *K9 Bytes, Inc. v Arch Capital Funding, LLC*, 56 Misc 3d 807, 818 [Sup Ct, Westchester Cty, May 4, 2017]. This prong of the test also weighs in favor of the agreement being a sale of receivables, rather than a loan.

As defendants have failed to establish the test weighs in favor of interpreting the agreement as a loan rather than a contract for the sale of receivables, despite the context of a prior apparent loan, the cross-motion for summary judgment fails.

**10**

[* 10]

## V.   CONCLUSION

For the reasons discussed above, it is hereby

ORDERED that plaintiff, CFG Merchant Solutions, LLC's motion for summary judgment is denied; and it is further

ORDERED that defendants, Tawa Roti Dhaulagiri Food, Corp DBA Tawa Roti Dhaulagiri Food's and Mohammad Amer's cross motion for summary judgment is denied; and it is further

ORDERED that counsel for plaintiff is directed to serve a copy of this order with notice of entry upon defendants; and it is further

ORDERED that counsel are directed to appear for a preliminary conference in Room 104, 71 Thomas Street, on January 21, 2025, at 10:00 AM, or as soon thereafter as they may be heard.

The foregoing constitutes the decision and order of the Court.

| 12/22/2024 | | | | |
|---|---|---|---|---|
| DATE | | | ALEXANDER M. TISCH, J.S.C. | |
| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | | |
| | ☐ GRANTED ☒ DENIED | ☐ GRANTED IN PART | ☐ OTHER | |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE | |

11