Bridge Funding Cap LLC v SimonExpress Pizza, LLC (2025 NY Slip Op 04306)

Bridge Funding Cap LLC v SimonExpress Pizza, LLC

2025 NY Slip Op 04306

Decided on July 25, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 25, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CURRAN, SMITH, NOWAK, AND DELCONTE, JJ.

294 CA 24-00993

[*1]BRIDGE FUNDING CAP LLC, PLAINTIFF-RESPONDENT,
v
SIMONEXPRESS PIZZA, LLC, DOING BUSINESS AS HUNGRY HOWIES, D19 BUILDING, LLC, D19 LIQUOR, INC., THE SIMON CORPORATION, INC., THE SIMONS ENTERPRISE, INC., SIMON & SONS ENTERPRISES, INC., SIMON STORES CORPORATION, SIMON LAND DEVELOPMENT GROUP, LLC, F & Z HOLDINGS, LLC, SE CORPORATION OF MICHIGAN, SIMON HOLDING, LLC, AND FAWZI R. SIMON, DEFENDANTS-APPELLANTS. (APPEAL NO. 2.) 

AMOS WEINBERG, GREAT NECK, FOR DEFENDANTS-APPELLANTS.
BERKOVITCH & BOUSKILA PLLC, POMONA (DANIELA PALGI OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 

 Appeal from an amended judgment of the Supreme Court, Ontario County (Frederick G. Reed, A.J.), entered June 24, 2024. The amended judgment awarded plaintiff the sum of $229,780, plus costs, disbursements and interest as against defendants. 
It is hereby ORDERED that the amended judgment so appealed from is reversed on the law without costs and the motion is denied.
Memorandum: This appeal arises from the execution of and performance under a revenue purchase agreement between plaintiff and defendants SimonExpress Pizza, LLC, doing business as Hungry Howies, D19 Building, LLC, D19 Liquor, Inc., The Simon Corporation, Inc., The Simons Enterprise, Inc., Simon & Sons Enterprises, Inc., Simon Stores Corporation, Simon Land Development Group, LLC, F & Z Holdings, LLC, SE Corporation of Michigan, and Simon Holding, LLC (collectively, entity defendants). The agreement was personally guaranteed by defendant Fawzi R. Simon (individual defendant), who guaranteed entity defendants' performance of the agreement.
Under the agreement, plaintiff advanced a monetary amount to the entity defendants in exchange for 25% of the future revenues of their business, until the purchased amount, i.e., an agreed-upon amount that was greater than the advanced amount, was paid to plaintiff. There was no interest rate or payment schedule and no time period during which the purchased amount was to be collected by plaintiff. Indeed, the agreement specifically stated that it was not a loan and that the entity defendants were "not borrowing money from" plaintiff. The agreement contained a daily remittance amount, which constituted "a good faith estimate of" plaintiff's share of the future revenue stream. The agreement also contained an acknowledgment from plaintiff that it was "entering this [a]greement knowing the risks that [the entity defendants'] business may slow down or fail, [that plaintiff] assumes these risks," and that there would be no recourse for plaintiff in the event the entity defendants went bankrupt, went out of business, or experienced a slowdown in business, among other things. The agreement also contained two reconciliation provisions, whereby the daily remittance would be modified both retroactively and prospectively upon request and with proof of earned revenue amounts.
Plaintiff commenced this action alleging, inter alia, that the entity defendants breached the agreement and that the individual defendant bore financial responsibility for that breach [*2]because he guaranteed performance by the entity defendants. Thereafter, plaintiff moved for summary judgment on the breach of contract and breach of guaranty causes of action. Defendants opposed the motion arguing, inter alia, that the agreement was actually a criminally usurious loan that was unenforceable and that, alternatively, plaintiff failed to meet its initial burden on the motion. Supreme Court granted plaintiff's motion, and awarded judgment to plaintiff. Defendants appeal from the amended judgment, which brings up for our review the order granting plaintiff's motion (see CPLR 5501 [a] [1]; see generally Bonczar v American Multi-Cinema, Inc., 38 NY3d 1023, 1025-1026 [2022], rearg denied 38 NY3d 1170 [2022]).
On appeal, defendants contend that the agreement is void because it is, in actuality, a criminally usurious loan. Consequently, they contend that the court erred in granting plaintiff's motion. Thus, the central question before us is whether the agreement was, in fact, a revenue purchase agreement or whether it was a loan. It is well settled that, "[i]f the transaction [in question] is not a loan, 'there can be no usury, however unconscionable the contract may be' " (Seidel v 18 E. 17 St. Owners, 79 NY2d 735, 744 [1992]; see Principis Capital, LLC v I Do, Inc., 201 AD3d 752, 754 [2d Dept 2022]). To make that determination, the agreement must be considered "in its totality and judged by its real character, rather than by the name, color, or form which the parties have seen fit to give it" (LG Funding, LLC v United Senior Props. of Olathe, LLC, 181 AD3d 664, 665 [2d Dept 2020] [internal quotation marks omitted]).
In determining whether a transaction constitutes a loan, courts must determine whether the plaintiff " 'is absolutely entitled to repayment under all circumstances' "; "[u]nless a principal sum advanced is repayable absolutely, the transaction is not a loan" (id. at 665-666; see Samson MCA LLC v Joseph A. Russo M.D. P.C./IV Therapeutics PLLC [appeal No. 2], 219 AD3d 1126, 1128 [4th Dept 2023]; Principis Capital, LLC, 201 AD3d at 754). "Usually, courts weigh three factors when determining whether repayment is absolute or contingent: (1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy" (LG Funding, LLC, 181 AD3d at 666; see Samson MCA LLC, 219 AD3d at 1128; Principis Capital, LLC, 201 AD3d at 754).
Here, contrary to defendants' contention, plaintiff established as a matter of law that the agreement was a revenue purchase agreement rather than a loan (see Samson MCA LLC, 219 AD3d at 1128; Principis Capital, LLC, 201 AD3d at 754). With respect to the first factor, the agreement submitted by plaintiff contained two reconciliation provisions that required the adjustment of the remittance amount upon the entity defendants' request based on changes to their revenues (see Samson MCA LLC, 219 AD3d at 1128). We note that the reconciliation provisions here were not illusory because, inter alia, they did not contain any language indicating that plaintiff would "not be subject to any consequences for failing to comply with its terms" or that plaintiff "ha[d] sole discretion to adjust the amount of the daily payments" (Oakshire Props., LLC v Argus Capital Funding, LLC, 229 AD3d 1199, 1201 [4th Dept 2024]). Under the second factor, we note that the agreement does not have a finite term or payment schedule (see Samson MCA LLC, 219 AD3d at 1128). Indeed, "the term of the agreement was not finite" inasmuch "as the amount of the monthly payments [made by the entity defendants] could change" as a consequence of the application of the agreement's reconciliation provisions (Principis Capital, LLC, 201 AD3d at 754). We further conclude that the third factor also weighs in favor of concluding that the agreement was not a loan inasmuch as under the agreement, plaintiff "did not have recourse in the event that the entity defendants declared bankruptcy," went out of business, or experienced a slowdown in business (Samson MCA LLC, 219 AD3d at 1128). Indeed, the agreement contained language indicating that plaintiff was entering the agreement "knowing the risks that [the entity defendants'] business may slow down or fail, and [that plaintiff] assumes these risks."
We nonetheless agree with defendants' alternative contention that the court erred in granting the motion because plaintiff did not meet its prima facie burden of establishing its entitlement to judgment as a matter of law with respect to the breach of contract and breach of guaranty causes of action. "It is well settled that the elements of a breach of contract cause of action are 'the existence of a contract, the plaintiff's performance under the contract, the defendant's breach of that contract, and resulting damages' " (Niagara Foods, Inc. v Ferguson Elec. Serv. Co., Inc., 111 AD3d 1374, 1376 [4th Dept 2013], lv denied 22 NY3d 864 [2014]; see Pearl St. Parking Assoc. LLC v County of Erie, 207 AD3d 1029, 1031 [4th Dept 2022]). As the [*3]party seeking summary judgment on that cause of action, plaintiff bore the initial burden of establishing the existence of all of those elements (see Wm. Schutt & Assoc. Eng'g & Land Surveying P.C. v St. Bonaventure Univ., 151 AD3d 1634, 1635 [4th Dept 2017], amended on rearg 153 AD3d 1676 [4th Dept 2017]; Resetarits Constr. Corp. v Elizabeth Pierce Olmsted, M.D. Center for the Visually Impaired [appeal No. 2], 118 AD3d 1454, 1455 [4th Dept 2014]). Here, we conclude that plaintiff's own submissions raise a triable issue of fact regarding the amount of any resulting damages inasmuch as the amount stated in the affidavit of plaintiff's manager conflicts with the amount stated in the complaint also verified by plaintiff's manager (see generally Sanchez v National R.R. Passenger Corp., 21 NY3d 890, 891 [2013]; Michael P. v Dombroski, 211 AD3d 1469, 1472 [4th Dept 2022]), and no explanation was proffered for that discrepancy. Plaintiff therefore failed to make the required prima facie showing of entitlement to judgment as a matter of law with respect to the breach of contract cause of action. Further, plaintiff's breach of guaranty cause of action is dependent on the success of the breach of contract cause of action. Inasmuch as plaintiff failed to meet its burden on the motion, the court should have denied the motion regardless of the sufficiency of defendants' opposing papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]).
In light of our conclusion, defendants' remaining contention is academic.
All concur except Nowak and DelConte, JJ., who concur in the result in the following memorandum: We agree with the majority that given the factual discrepancies in this record, plaintiff failed to meet its initial burden on its motion for summary judgment. However, unlike the majority, we would not apply the tripartite test derived from K9 Bytes, Inc. v Arch Capital Funding, LLC (56 Misc 3d 807, 816-818 [Sup Ct, Westchester County 2017]), adopted by the Second Department in LG Funding, LLC v United Senior Props. of Olathe, LLC (181 AD3d 664, 665-666 [2d Dept 2020]) and by our Court in Samson MCA LLC v Joseph A. Russo M.D. P.C./IV Therapeutics PLLC ([appeal No. 2], 219 AD3d 1126, 1128 [4th Dept 2023]) to determine whether the agreement constitutes an actual revenue purchase agreement or a usurious loan. In our view, the Samson MCA LLC test is insufficient. Instead, we propose a test which we believe is better suited to reliably differentiate between a loan and revenue purchase agreement.
Under the Samson MCA LLC test, the "three factors [to be weighed] when determining whether repayment is absolute or contingent [are]: (1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy" (Samson MCA LLC, 219 AD3d at 1128 [internal quotation marks omitted]).
Reliance on the first two factors could result in an inaccurate finding that the parties have made a legitimate revenue purchase agreement as opposed to entering into a usurious loan. The first factor requires the presence of a reconciliation provision, but not necessarily an analysis of its validity. The second factor asks whether the agreement is for a finite term. But these two factors are just different sides of the same coin. Whether the agreement has a finite term is entirely dependent upon whether the agreement has a valid reconciliation provision. Absent a valid reconciliation provision—which the merchant could utilize to actually reduce its payments during times of lower than anticipated revenue—the agreement is necessarily for a fixed daily (or weekly) payment until the sum borrowed is repaid.
Reliance on the third factor could lead to the opposite inaccurate result; that the parties entered into a usurious loan when they actually made a legitimate revenue purchase agreement. The K9 Bytes, Inc. court reasoned that where the lender is able to recover funds via a personal guarantee in the event of a breach of the agreement or bankruptcy, the lender is not assuming the risk that their investment might fail, and thus, the agreement is more akin to a usurious loan (56 Misc 3d at 818). However, "[u]nder . . . New York law, a guarantee agreement is separate and distinct from the contract between lender and borrower" (Kinville v Jarvis Real Estate Holdings, LLC, 38 AD3d 1225, 1227 [4th Dept 2007] [internal quotation marks omitted]). Thus, a financing company and a merchant should be free to agree to a guarantee, which may reduce the interest required by the merchant, without the risk that the existence of the guarantee might convert the parties' otherwise legitimate agreement to exchange immediate funds for future accounts receivable into a usurious loan.
In our view, the more appropriate test under these circumstances—where the parties agree [*4]to a fixed daily or weekly payment as an "estimate" of revenue—is to evaluate: (1) whether the "estimate" of the defendant's revenue is reasonably based upon the defendant's prior accounts receivable or anticipated future earnings (rather than simply conjured from the void); and (2) not whether a reconciliation provision exists, but whether it is illusory—that is, whether there is an actual, practical ability for the defendant merchant to reconcile and adjust the amount owed based on actual revenue.
As to the first factor, if the parties' estimate of the merchant's future revenue is reasonably based upon the merchant's prior performance or projected upon future growth, the agreement would appear to reflect a true purchase of future accounts receivable. Conversely, where the numbers are vastly inflated, or are simply round numbers for ease of accounting, the agreement looks more like a loan.
Here, the first factor compels the conclusion that the agreement looks more akin to a traditional loan, which precludes summary judgment to plaintiff. To that end, the defendant merchants agreed to pay a total of $360,000 at a rate of $3,500 per day—which the parties claimed to be 25% of defendants' daily receivables. Thus, by the express terms of the agreement, defendants were purportedly earning $14,000 per day, or $5,110,000 per year. However, during the course of discovery, the parties stipulated that defendant merchants had $1,440,220 in revenue between January 30, 2020 and April 12, 2023, a period of over three years—earnings of $1,232.01 per day, less than 10% of the initial $14,000 "estimate." Moreover, by the express terms of the agreement, defendants were required to pay 103 installments of $3,500 starting January 15, 2020, and thus, the debt would be fully repaid by April 27, 2020. However, plaintiff alleges that defendants performed under the agreement until June 30, 2020, more than two months after the agreement should have been repaid.
As to the second factor, if the ability of the merchant to reconcile is merely illusory, then the agreement is simply a usurious loan. In some circumstances, a reconciliation provision may be illusory on its face, such as where a lender "has sole discretion to adjust the amount of the daily payments" (Oakshire Props., LLC v Argus Capital Funding, LLC, 229 AD3d 1199, 1201 [4th Dept 2024] [emphasis added]). In other circumstances, a reconciliation provision may appear valid on its face, but be illusory in practice. For example, the lender could repeatedly request a merchant to submit documentation to support a change in revenue while continuing to debit the designated account. This factor would generally present a factual question, as it does here, and in our view, also precludes summary judgment to plaintiff.
Entered: July 25, 2025
Ann Dillon Flynn
Clerk of the Court