Blue Elephant Specialty Fin. Fund, LP v Gaspard & Menon Constr., LLC (2025 NY Slip Op 52131(U))

[*1]

Blue Elephant Specialty Fin. Fund, LP v Gaspard & Menon Constr., LLC

2025 NY Slip Op 52131(U)

Decided on November 10, 2025

Supreme Court, Westchester County

Walsh, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 10, 2025
Supreme Court, Westchester County

Blue Elephant Specialty Finance Fund, LP, Plaintiffs,

againstGaspard & Menon Construction, LLC d/b/a RESTORATION ROOFING, JONATHAN GASPARD and SUNEEL MENON, Defendants.

Index No. 61698/2025

CAPOBIANCO & ASSOCIATES
By: Joseph Capobianco, Esq.,
Attorneys for Plaintiff Blue Elephant Specialty Finance Fund, LP
1305 Franklin Avenue, Suite 270 
Garden City, NY 11530
PHILLIPS LYTLE LLP 
By: Joseph L. Mooney, Esq.
Attorneys for Defendant Suneel Menon
125 Main Street
Buffalo, NY 14203

Gretchen Walsh, J.

The following e-filed documents, listed in NYSCEF under document numbers 18-46, were read on this motion by Blue Elephant Specialty Finance Fund, LP ("Plaintiff") for an order: (1) granting a default judgement against Defendants Gaspard & Menon Construction, LLC d/b/a Restoration Roofing ("G&M Construction") and Jonathan Gaspard ("Gaspard") (together "Defaulting Defendants") pursuant to CPLR 3215(a) on Plaintiff's First and Fourth Causes of Action in the amount of $215,927.12, plus interest at a rate of eighteen percent per annum from December 1, 2024, together with all other contractually applicable charges accrued thereafter; and (2) granting summary judgment against Defendant Suneel Menon ("Menon") on the Fifth Cause of Action in the amount of $215,927.12, plus interest at a rate of eighteen percent per annum from December 1, 2024, together with all other contractually applicable charges accrued thereafter. Defaulting Defendants have not put in opposition to Plaintiff's motion despite having been served with a copy of the same. Defendant Menon opposes the motion.
Upon the foregoing documents, and for the reasons set forth herein, Plaintiff's motion [*2]shall be granted.PLAINTIFF'S CONTENTIONS IN SUPPORT OF ITSMOTION
Plaintiff commenced this action on April 22, 2025 by filing its Summons and Verified Complaint. The action arises out of G&M Construction's alleged failure to pay the sums due under a Note dated January 1, 2024 and, following G&M Construction's alleged default, the alleged failure by Gaspard and Menon to pay the sum due on the Note as guarantors. In support of its motion, Plaintiff submits: (1) an affirmation of Joseph Capobianco, Esq. dated August 6, 2025 ("Capobianco Aff." [NYSCEF Doc. No. 19]); (2) an affirmation of Ashees Jain, Plaintiff's Chief Investment Officer, dated August 6, 2025, together with the exhibits annexed thereto ("Jain Aff." [NYSCEF Doc. No. 20]); and (3) a Statement of Material Facts.
In his affirmation, Jain references the Note and Guarantees, which are attached as exhibits to Plaintiff's moving papers (NYSCEF Doc. Nos. 23-25), and affirms that G&M Construction defaulted on the payment due under the Note as of January 1, 2025 and continued to default on each payment due thereafter (Jain Aff. at ¶ 6). Jain states that during the period February 18, 2025-March 24, 2025, Plaintiff sent Notices (NYSCEF Doc. Nos. 26-28) to Menon and the Defaulting Defendants to advise them of their defaults in failing to make the monthly payments due and that the outstanding principal balance was $215,927.12 (id. at ¶¶ 7-8). According to Jain, upon G&M Construction's default, the interest on the Note began accruing at a rate of 18% from December 1, 2024, together with all contractually applicable charges accrued thereafter that are now due and owing (id. at ¶ 10). Jain asserts that despite due demand, neither Menon nor the Defaulting Defendants have made any payments nor have they contested the amounts reflected as due in the Notices (id. at ¶ 11).
In opposition, Menon submits: (1) his affirmation in opposition dated September 19, 2025 ("Menon Opp. Aff." [NYSCEF Doc, No. 42]), together with two exhibits: (i) a Receivables Purchase Agreement dated February 14, 2019 between Plaintiff and Gaspard and Morgan Construction LLC (d/b/a Restoration Roofing) ("Gaspard & Morgan Construction LLC") (the "Purchase Agreement" [NYSCEF Doc. No. 43]); and (ii) Amendment No. 1 to the Receivables Purchase Agreement dated November 4, 2021 (the "Amended Purchase Agreement" [NYSCEF Doc. No. 44]); (2) Menon's Response to Plaintiff's Statement of Material Facts and Counter-Statement of Material Facts (NYSCEF Doc. No. 45); and (3) a memorandum of law in opposition ("Menon's Opp. Mem." [NYSCEF Doc. No. 41]).
In his opposition affirmation, Menon states that G&M Construction was previously known as Gaspard & Morgan Construction LLC and that he obtained his membership interest in G&M Construction by purchasing his membership interest in it from Jared Morgan and that the name of the company was thereafter changed to reflect his membership interest (Menon Opp. Aff. at ¶ 2). Menon refers to the exhibits he attaches to his affirmation (i.e., the Purchase Agreement and the Amended Purchase Agreement), and affirms that G&M Construction was not a party to either the Purchase Agreement or the Amended Purchase Agreement (id. at ¶¶ 5-6). He further asserts that he was not a party to the Purchase Agreement, and that he did not guarantee any obligations which may have been owed by Gaspard & Morgan Construction LLC (id. at ¶ 7). Finally, he contends that given the foregoing facts, he is "unaware of the repayment obligations of Gaspard & Morgan Construction LLC under the Purchase Agreement or Amended Purchase Agreement and the interest rate at which such obligations were to be repaid" (id. at ¶ 8).
In his opposition memorandum, Menon makes two arguments. First, Menon argues that [*3]Plaintiff's motion for summary judgment must be denied as the loan is usurious and unenforceable under General Obligations Law ("GOL") §§ 5-501, 5-511, 5-521; Banking Law § 14-a(1); and Penal Law § 190.40. Second, Menon argues that "the motion should be denied as premature pursuant to CPLR 3212(f) as facts essential to justify opposition may exist but cannot now be stated as no discovery has taken place" (NYSCEF Doc. No. 41 at 1).
Citing to these various statutes, Menon argues that the maximum rate of interest that may be charged is 16% and that "a lender commits a class E felony when, without other legal authorization, the lender, 'knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding (25%) per annum or the equivalent rate for a longer or shorter period'" (id. at 2 [citations omitted]). Menon notes that although civil usury is not available to limited liability company borrowers, this bar does not preclude such entities from raising the defense of criminal usury in a civil action (id.).
Menon then recites the various provisions contained in the Note annexed to Plaintiff's Complaint, which include that the amount of the Note ($249,639.20) was derived from: (1) $87,040.40 owed under a Restated Promissory Note Secured by a Security Agreement as amended on July 31, 2023; and (2) $162,599.16 owed by under the Purchase Agreement dated February 14, 2019, as amended on November 4, 2021 (id. at 3). Menon points out that contrary to the Note's recitation of the parties on the Purchase Agreement as Elephant Specialty Finance, LP (not Plaintiff) and Gaspari & Menon Construction, LLC, the actual parties on the Purchase Agreement were Blue Elephant Financing, LP and Gaspard & Morgan Construction LLC (id. at 3). Menon argues that "[d]espite its name, the Purchase Agreement gives every appearance of being a loan and may well have included a criminally usurious interest rate. However, absent discovery, the rate of interest effectively charged cannot be determined. See CPLR 3212(f)" (id.).
Menon points out that, in determining whether a transaction is a usurious loan, courts look to whether repayment is absolute or contingent and, in making this determination, they weigh three factors: "(1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy" (id. at 4, quoting Oakshire Props., LLC v Argus Capital Funding, LLC, 229 AD3d 1199, 1200-1201 [4th Dept 2024]). Menon argues that:
[t]he Purchase Agreement does not contain a reconciliation provision. It has a definite term of twenty-four (24) months, which term was extended by an addition[al] twenty-four (24) months when it was amended . . . The Purchase Agreement was guaranteed by Jared Morgan and Jonathan Gaspard, "as the principals of Gaspard and Morgan Construction, L.L.C." Morgan and Gaspard agreed to "jointly and severally, with Seller [Gaspard and Morgan Construction, LLC] and with each other, guarantee the representations and warranties made by Seller" . . . Menon did not guarantee the Purchase Agreement. However, Morgan and Gaspard did and, therefore, Blue Elephant Financing, LLC had full recourse for payment in the event of bankruptcy by the "merchant" [Gaspard and Morgan Construction, LLC] . . . The terms of the Purchase Agreement establish that it was a loan, pursuant to which repayment was absolute, rather than a purchase of future receipts under which repayment was contingent upon Gaspard and Morgan Construction, LLC's actual sales . . . And, because it is a loan, the Purchase Agreement is void if the interest rate charged is criminally usurious (id.).Menon concludes by arguing that, because the Purchase Agreement is clearly a loan, if the [*4]interest rate charged is criminally usurious, then the loan would be void. However, because "Menon is not a party to the Purchase Agreement and discovery has not yet taken place in this action, he has not had an opportunity to determine the interest rate — a fact essential to his opposition to Blue Elephant's motion for summary judgment" and, therefore, the Court should deny Plaintiff's motion or grant a continuance so that discovery may take place (id. at 5).
In further support of its motion, Plaintiff submits a reply affirmation of Joseph Capobianco, Esq. dated September 25, 2025 ("Capobiano Reply Aff." [NYSCEF Doc. No. 46]). After repeating the arguments made in its moving papers as to why it is entitled to a default judgment [FN1]
against the Defaulting Defendants and summary judgment against Menon, Plaintiff states that pursuant to the terms of the guaranties:
(1) Gaspard and Menon are jointly and severally liable to Plaintiff for the principal balance together with interest at a rate of 18% per annum from December 1, 2024 (Capobiano Reply Aff. at ¶ 3[q], citing NYSCEF Doc. No. 45 at ¶ 18);(2) Menon is liable for all attorneys' fees and expenses incurred in enforcing these obligations (Capobiano Reply Aff. at ¶ 3[r], citing NYSCEF Doc. No. 45 at ¶ 19);(3) Menon agreed to "waive to the extent permitted by law any and all rights and defenses, including without limitation any rights of subrogation, reimbursement, indemnification and contribution, which might otherwise be available to" Menon under New York law (Capobiano Reply Aff. at ¶ 3[s], citing NYSCEF Doc. No. 45 at ¶ 20);(4) Menon acknowledged that Plaintiff bargained for the waiver and relinquishment by Menon of all such defenses (Capobiano Reply Aff. at ¶ 3[t], citing NYSCEF Doc. No. 45 at ¶ 21);(5) Menon agreed that based on his ownership interest in G&M Construction, "he would derive benefits from G&M Construction's refinancing of its debt to Plaintiff" (Capobiano Reply Aff. at ¶ 3[u], citing NYSCEF Doc. No. 45 at ¶ 22);(6) Menon agreed that "there are no conditions precedent to the effectiveness of this Guaranty" (Capobiano Reply Aff. at ¶ 3[v], citing NYSCEF Doc. No. 45 at ¶ 23);(7) Menon agreed that he waived "presentment, demand, protest and notice of any kind" (Capobiano Reply Aff. at ¶ 3[w], citing NYSCEF Doc. No. 45 at ¶ 24).Based on the foregoing, Plaintiff argues that there can be no legitimate opposition by Menon to Plaintiff's motion. Nevertheless, Plaintiff proceeds to respond to the arguments raised by Menon in opposition (Capobiano Reply Aff. at ¶ 4).
Plaintiff argues that its motion should be granted as Menon has not refuted the material facts set forth in Plaintiff's moving papers concerning the obligations under the Note and Guaranty and that, instead, "Menon attempts to conflate the issues in this action by claiming that the . . . [Purchase Agreement], which Plaintiff is not attempting to enforce, is 'usurious'" (id. at ¶ 8). According to Plaintiff, "[i]t defies belief that Menon now attempts to argue that the Note is usurious because he admits that: (1) the interest on the daily outstanding balance of the Note accrued at the rate of 14.57% per annum provided there was no event of default . . . ; and (b) interest on the Principal Balance of the Note accrued at the rate of eighteen (18%) per annum [*5]after a default . . . Since the Opposition Papers conceded that the defense of civil usury is unavailable in this action and the defense of criminal usury is only applicable to loans where the interest rate exceeds twenty-five (25%) percent and the interest rate in the Note do[es] not exceed twenty-five (25%) percent even in the event of a default it is frivolous for Menon to even attempt to assert a usury defense in this action" (id. at ¶ 10).
In response to Menon's argument that the Purchase Agreement is a loan, Plaintiff argues that it is not a loan. Instead, Plaintiff asserts that it is "an agreement, whereby Plaintiff purchased certain receivables due and owing to G&M Construction for a purchase price equal to seventy-eight percent of the outstanding balance of the receivable (See NYSCEF Doc. No. 43, p.3, § 4.2). The terms of the Purchase Agreement further confirm that 'the transaction contemplated hereunder shall constitute a true sale, assignment and transfer of the Eligible Receivables to (Plaintiff0 thereby providing (Plaintiff) with the full benefits of ownership' (See NYSCEF Doc. No. 43, p.3, § 3.2)" (Capobiano Reply Aff. at ¶ 11). Plaintiff further argues that "Menon's conclusory allegation that the Purchase Agreement was a loan is further belied by the fact that there is no interest rate, an essential term for any loan transaction. Menon also fails to identify any terms contained in the Purchase Agreement which are normally associated with a loan. This is because the Purchase Agreement was never intended to be a loan but rather a purchase and sale agreement" (id. at ¶ 12).
Finally, in response to Menon's argument that summary judgment is premature, Plaintiff argues that to establish this, Menon "was required to demonstrate that discovery might lead to relevant evidence or that the facts essential to justify opposition to the motion were exclusively within the knowledge and control of the moving party" and that Menon failed to do so as "all evidence is already within Menon's possession and control or does not exist" (id. at ¶¶ 16-17). In support, Plaintiff points out that "[a]ll information concerning [the receivables Plaintiff purchased] is in G&M Construction's possession and Plaintiff has no knowledge of these receivables" and because the Purchase Agreement was not a loan, and no interest rate was charged, . . . there are no documents or discovery that could be obtained from Plaintiff that would establish an interest rate" (id. at ¶ 17). Finally, Plaintiff argues that because Menon has not alleged repayment of the Note or Guaranty (i.e., Defendants have conceded their defaults), "there is no basis for the Court to deny or continue Plaintiff's summary judgment motion to allow discovery by Menon" (id. at ¶ 18).
DISCUSSION
A. Plaintiff's Motion for a Default Judgment against the Defaulting Defendants
Pursuant to CPLR 3215(f), "'[a]n applicant for a default judgment against a defendant must submit proof of service of the summons and complaint, proof of the facts constituting the claim, and proof of the defaulting defendant's failure to answer or appear'" (Lancer Ins. Co. v Fishkin, 211 AD3d 719, 720 [2d Dept 2022], quoting Countrywide Home Loans Servicing, L.P. v Vorobyov, 188 AD3d 803, 806 [2d Dept 2020]; see also Atlantic Cas. Ins. Co. v RJNJ Servs. Inc., 89 AD3d 649 [2d Dept 2011]). "To demonstrate the facts constituting the claim, the movant need only submit sufficient proof to enable a court to determine if the claim is viable" (Lancer Ins. Co., 211 AD3d at 721). "A verified complaint may be used as [an] affidavit of the facts constituting the claim, but it must allege 'enough facts to enable a court to determine that a viable cause of action exists'" (Triangle Props. 2, LLC v Narang, 73 AD3d 1030, 1032 [2d Dept 2010] [citations omitted]).
However, default judgments are not to be rubber-stamped once jurisdiction and failure to [*6]appear are shown. Proof must still be submitted to satisfy the Court, at least prima facie, as to the viability of the uncontested cause of action (Joosten v Gale, 129 AD2d 531 [1st Dept 1987]; see CPLR 3215[b], [f]). Even if there appears to be no opposition, the Court should not exercise its power, whether statutory or inherent, in a manner or under such circumstances where that power could work an injustice to litigants or to non-parties (Rivera v Laporte, 120 Misc 2d 733, 735 [Sup Ct, New York County 1983]).
To avoid the entry of a default judgment, the defaulting party is required to demonstrate a reasonable excuse for the default and a meritorious defense to the action (Grinage v City of NY, 45 AD3d 729 [2d Dept 2007]; Zino v Joab Taxi, Inc., 20 AD3d 521 [2d Dept 2005]; Pampalone v Giant Bldg. Maintenance, Inc., 17 AD3d 556 [2d Dept 2005]; Ennis v Lema, 305 AD2d 632 [2d Dept 2003]). The determination of what constitutes a reasonable excuse for a default lies within the sound discretion of the court (Grinage, 45 AD3d 729; Ennis, 305 AD2d 632).
"The essential elements of a cause of action to recover damages for breach of contract are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach" (Tudor Ins. Co. v Unithree Inv. Corp., 137 AD3d 1259 [2d Dept 2016]). "To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound" (Kowalchuk v Stroup, 61 AD3d 118 [1st Dept 2009]). Here, the Jain Affirmation with its attached Note and Guarantees, establishes the existence of the Agreement, the value given therefor and the resultant default. Plaintiff has thus demonstrated its entitlement to default judgment on its breach of contract and breach of guaranty claims "by submitting evidence demonstrating the existence of the finance agreement and the [Defendants'] default thereunder" (IPFS Corp. v Manetta Enter., Inc., 160 AD3d 706, 707 [2d Dept 2018]; Bnb Bank N.A. v Sherwood Asian Inc., 2012 NY Slip Op 30159[U] at * 6[Sup Ct, Nassau County 2012] [motion granted as to breach of contract and breach of guarantee where "Plaintiff has established Defendants' execution of the Note, Security Agreement and Guarantee, and Defendants' failure to make payment pursuant to those instruments. Moreover, Defendants have failed to appear, answer or respond to Plaintiffs motion"]; see also E.D.S. Sec. Sys., Inc. v Allyn, 262 AD2d 351 [2d Dept 1999]).
Here, Plaintiff has demonstrated its entitlement to an order granting it a default judgment against the Defaulting Defendants since it has submitted proof of service of the Summons and Complaint on Defaulting Defendants, the merits of the First and Fourth Causes of Action in the amount of $215,927.12, as well as evidence that Defaulting Defendants failed to timely appear or otherwise respond to the Complaint (see CPLR 3215[f]; U.S. Bank N.A. v Alba, 130 AD3d 715 [2d Dept 2015]; HSBC Bank USA, N.A., v Alexander, 124 AD3d 838 [2d Dept 2015]; Todd v Green, 122 AD3d 831 [2d Dept 2014]).
To avoid the entry of a default judgment, Defaulting Defendants were required to demonstrate a reasonable excuse for the default and a meritorious defense to the action (Grinage, 45 AD3d 729, citing Giovanelli v Rivera, 23 AD3d 616 [2d Dept 2005]; Zino, 20 AD3d 521; Pampalone, 17 AD3d 556; Ennis, 305 AD2d 632). The determination of what constitutes a reasonable default lies within the sound discretion of the Court (Grinage, 45 AD3d at 730, citing Juseinoski v Board of Educ. of City of NY, 15 AD3d 353, 356 [2d Dept 2005]; Ennis, 305 AD2d at 633).
Defaulting Defendants failed to submit responsive papers to Plaintiff's motion, notwithstanding due service of the papers on them. Accordingly, Plaintiff's motion for a default [*7]judgment shall be granted. However, because Plaintiff's counsel failed to provide its billing records, the Court cannot undertake the analysis required for attorneys' fees. Accordingly, Plaintiff's request for an award of attorneys' fees shall be held in abeyance with leave for Plaintiff to renew based on counsel's provision of a proper affirmation of legal services together with his billing records.
B. Plaintiff's Motion for Summary Judgment Against Menon
The legal standards to be applied in evaluating a motion for summary judgment pursuant to CPLR 3212 are well-settled. "Summary judgment is a drastic remedy, to be granted only where the moving party has 'tender[ed] sufficient evidence to demonstrate the absence of any material issues of fact' . . . and then only if, upon the moving party's meeting of this [prima facie] burden, the non-moving party fails to establish the existence of material issues of fact which require a trial of the action'" (Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012], quoting Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). "On a motion for summary judgment, facts must be viewed 'in the light most favorable to the non-moving party'" (Vega, 18 NY3d at 503, quoting Ortiz v Varsity Holdings, LLC, 18 NY3d 335, 339 [2011]). "It is the defendants' burden, as the party moving for summary judgment, to demonstrate their prima facie entitlement to judgment as a matter of law by submitting evidence conclusively establishing their defense to the action . . . ." (Fricano v Law Offs. of Tisha Adams, LLC, 194 AD3d 1016, 1017 [2d Dept 2021]). Accordingly, "summary judgment is appropriate 'where only one conclusion may be drawn from the established facts'" (Jones v Saint Rita's R.C. Church, 187 AD3d 727, 729 [2d Dept 2020], quoting Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315 [1980]), or where a cause of action and/or the type of damages sought "fails as a matter of law" (Ramos v Howard Indus., Inc., 10 NY3d 218, 224 [2008]; see also M.V.B. Collision, Inc. v Allstate Ins. Co., 187 AD3d 881 [2d Dept 2020]).
Once the moving party has made a prima facie showing of entitlement to summary judgment, the burden of production shifts to the opponent, who must go forward and produce sufficient evidence in admissible form to establish the existence of a triable issue of fact or demonstrate an acceptable excuse for failing to do so (Reyes v Arco Wentworth Mgt. Corp., 83 AD3d 47; Jacobsen v New York City Health & Hosps. Corp., 22 NY3d 824 [2014]). A party opposing summary judgment may not rest on mere conclusions or unsupported assertions; rather the party must "affirmatively demonstrate the merit of its claim or defense" (Collado v Jiacono, 126 AD3d 927, 928 [2d Dept 2015]; Sun Yau Ko v Lincoln Sav. Bank, 99 AD2d 943 [1st Dept 1984], affd 62 NY2d 938 [1984]). Even where there is no opposition, however, "[a] summary judgment motion should not be granted merely because the party against whom judgment is sought failed to submit papers in opposition to the motion" (Liberty Taxi Mgt., Inc. v Gincherman, 32 AD3d 276, 277 [1st Dept 2006], citing Vermont Teddy Bear Co. v 1-800 Beargram Co., 373 F3d 241 [2d Cir. 2004]).
"It is not the function of a court deciding a summary judgment motion to make credibility determinations or findings of fact, but rather to identify material triable issues of fact (or point to the lack thereof)" (Vega, 18 NY3d at 505). Since summary judgment is a drastic remedy, it should not be granted where there is any doubt as to the existence of a triable issue (Pizzo-Juliano v Southside Hosp., 129 AD3d 695 [2d Dept 2015]; William J. Jenack Estate Appraisers & Auctioneers, Inc. v Rabizadeh, 22 NY3d 470 [2013]). Thus, when the existence of an issue of fact is even arguable or debatable, summary judgment should be denied (Stone v Goodson, 8 NY2d 8, 12 [1960]; Collado, 126 AD3d 927). In reviewing a motion for summary judgment, the [*8]Court must accept as true the evidence presented by the nonmoving party and must deny the motion "if there is any doubt as to the existence of a triable issue" (Herrin v Airborne Freight Corp., 301 AD2d 500, 501 [2d Dept 2003]; see also Stukas v Streiter, 83 AD3d 18 [2d Dept 2011]).
"Where the defense of usury is asserted in opposition to a motion for summary judgment, the party asserting the validity of [the] loan bears the burden of demonstrating, as a matter of law, that the transaction between the parties was not usurious . . . If there exists a triable issue of fact as to the applicability of the defense of usury, a motion for summary judgment should not be granted" (Case Cash Funding, LLC v Gilberg, 55 Misc 3d 144[A], 2017 NY Slip Op 50649[U] at * 2 [App Term, 2d, 11th & 13th Jud. Dists. 2017]). In this case, the parties agree that because this was a commercial transaction, Menon can only assert a defense of criminal usury and not civil usury (i.e., the loan at issue charged an interest rate in excess of 25% a year in violation of Penal Law § 190.40) (Abir v Malky, Inc., 59 AD3d 646 [2d Dept 2009]). "A usurious contract is void and relieves the plaintiff of the obligation to repay principal and interest thereon" (id. at 649).
"The rudimentary element of usury is the existence of a loan or forbearance of money, and where there is no loan, there can be no usury . . . ." (LG Funding, LLC v United Senior Props .of Olathe, LLC, 181 AD3d 664, 665 [2d Dept 2020]) "To determine whether a transaction constitutes a usurious loan, 'it must be "considered in its totality and judged by its real character, rather than by the name, color, or form which the parties have seen fit to give it"'" (id., quoting Abir, 59 AD3d at 649 ) "The court must examine whether the plaintiff 'is absolutely entitled to repayment under all circumstances'" (LG Funding, LLC, 181 AD3d at 665, quoting K9 Bytes, Inc. v Arch Capital Funding, LLC, 56 Misc 3d 807, 816 [Sup Ct, Westchester County 2017]). "Unless a principal sum advanced is repayable absolutely, the transaction is not a loan" (id. at 666). The factors to be reviewed in determining whether repayment is absolute or contingent include: "(1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy" (LG Funding, LLC, 181 AD3d at 666; see also Apollo Funding Co. v Dave Reilly Contr. LLC, 241 AD3d 1508 [2d Dept 2025]; True Bus. Funding, LLC v Guerro A Construction Corp., 239 AD3d 787 [2d Dept 2025]; Principis Capital, LLC v I Do, Inc., 201 AD3d 752 [2d Dept 2022]). "Whether a transaction constitutes a cover for usury is a question of fact . . . [I]t must appear that the real purpose of the transaction was, on the one side, to lend money at usurious interest reserved in some form by the contract and, on the other side, to borrow upon the usurious terms'" (Abir, 59 AD3d at 649, quoting Donatelli v Siskind, 170 AD2d 433, 434 [2d Dept 1991]).
As an initial matter, the Court does not agree that, based on the terms of the Guaranty, Menon waived his right to assert a criminal usury defense. First, the waiver language in the Guaranty does not mirror the waiver language found by the Court of Appeals to be sufficient to waive such a defense (see Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v Navarro, 25 NY3d 485 [2015]; Citibank, N.A. v Plapinger, 66 NY2d 90 [1985]).[FN2]
Here, the Guaranty states [*9]that Menon, "unconditionally and irrevocably guarantees and promises to pay to Lender . . . all amounts due under the Loan and the Loan Documents . . . ." (NYSCEF Doc. No. 4 at ¶ 1[a]). The Guaranty also provides that the
Guarantor waives: (a) any defense based upon any legal disability or other defense of Borrower, any other guarantor or other person, or by reason of the cessation or limitation of the liability of Borrower from any cause other than full payment of all sums payable under the Restated Note or any of the other Loan Documents; (b) any defense based upon any lack of authority of the shareholders, members, managers, officers, directors, partners or agents acting or purporting to act on behalf of Guarantor or of Borrower or any principal of Borrower or any defect in the formation of Borrower or any principal of Borrower, if Borrower is an entity; (c) any defense based upon the application by Borrower of the proceeds of the Loan for purposes other than the purposes represented by Borrower to Lender or intended or understood by Lender or Guarantor; (d) any and all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against the principal by the operation of New York law or otherwise; (e) any defense based upon Lender's failure to disclose to Guarantor any information concerning Borrower's financial condition or any other circumstances bearing on Borrower's ability to pay all sums payable under the Restated Note or any of the other Loan Documents; (f) any defense based upon any statute or rule of law which provides that the obligation of a surety must be neither larger in amount nor in any other respects more burdensome than that of a principal; (g) any defense based upon Lender's election, in any proceeding instituted under the Federal Bankruptcy Code, of the application of Section IIII (b)(2) of the Federal Bankruptcy Code or any successor statute; (h) any defense based upon any borrowing or any grant of a security interest under Section 364 of the Federal Bankruptcy Code; (i) any right of subrogation, any right to enforce any remedy which Lender may have against Borrower and any right to participate in, or benefit from, any security for the Restated Note or the other Loan Documents now or hereafter held by Lender; (j) the benefit of any statute of limitations affecting the liability of Guarantor hereunder or the enforcement hereof; and (k) presentment, demand, protest and notice of any kind. Guarantor further waives any and all rights and defenses that Guarantor may have because Borrower's debt is secured by real or personal property; this means, among other things, that Lender may collect from Guarantor without first [*10]foreclosing on any real or personal property collateral pledged by Guarantor or Borrower. The foregoing sentence is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's debt is secured by real or personal property. Without limiting the generality of the foregoing or any other provision hereof, Guarantor further expressly waives to the extent permitted by law any and all rights and defenses, including without limitation any rights of subrogation, reimbursement, indemnification and contribution, which might otherwise be available to Guarantor under New York law. Finally, Guarantor agrees that the performance of any act or any payment which tolls any statute of limitations applicable to the Restated Note or any of the other Loan Documents shall similarly operate to toll the statute of limitations applicable to Guarantor's liability hereunder (NYSCEF Doc. No. 4 at ¶ 4).A review of the specific defenses that Menon waived does not include an agreement to waive a criminal usury defense or even a general defense concerning the lack of validity or enforceability of the Note. And even if Menon did explicitly waive a usury defense, it is unlikely that such a waiver would be effective as the Court of Appeals has made clear that any transaction tainted by criminal usury is void ab initio (Adar Bays, LLC v GeneSYS ID, Inc., 37 NY3d 320 [2021]). Plaintiff has not provided any authority to support that the waiver language found in the Guaranty is sufficient for a finding that Menon waived his right to assert a criminal usury defense.
Second, the Court does not agree that the Purchase Agreement has no relevance to whether the Note violates the criminal usury laws. Thus, it is well settled that
[t]he usurious nature of a contract or obligation is to be determined as of the time it is entered into, and an obligation void at its inception for usury continues to be void forever, whatever its subsequent history may be, unless it is purged of usury. The taint of usury attaches to all consecutive obligations or securities growing out of the original usurious transaction, and none of the decedent obligations, however remote, is free from it if the descent can be traced . . . Merely renewing a usurious contract by the giving of a substituted contract whereby the terms of the original contract are continued in force does not purge the transaction of usury even where the second obligation is different in form. The same result obtains where a new debtor or obligor is introduced into the renewal contract that is based on the same consideration as the prior usurious contract. The making of a payment on a note or other obligation affected with usury and the entering into a new contract for the balance due will not purge the transaction of usury unless the usurious feature is abandoned, and the new obligation is for a portion of the actual debt freed from all usurious consideration (72 NY Jur 2d, Interest and Usury, § 147). Here, based on the language of the Note, it is clear that debt associated with the Purchase Agreement was incorporated within the debt underlying the Note [FN3]
and, as such, it is entirely proper to consider whether the Purchase Agreement violates Penal Law § 190.40. And based on [*11]the foregoing authority, it is irrelevant that the parties changed between the Purchase Agreement and the Note (i.e., G&M Construction replaced Gaspan & Morgan Construction LLC in the Note and Menon replaced Morgan as guarantor under the Guaranty).
Turning to whether the Purchase Agreement constituted a loan and not a receivables purchase agreement, Plaintiff is correct that there are provisions making clear that Plaintiff (as Purchaser) and Gaspan & Morgan Construction LLC (as Seller) were making an outright sale of certain of Seller's receivables for a purchase price of 78% of the receivables' balance (NYSCEF Doc. No. 43 at §1, ¶¶ 7, 8; §3, ¶ 2).[FN4]
However, based on the three factors set forth above, Plaintiff has not established that there are no triable issues of fact over whether the Purchase Agreement was a loan and whether the amount collected under the Purchase Agreement (to the extent that amount was incorporated by reference into the Note) was greater than 25% (Crystal Springs Capital, Inc. v Big Thicket Coin, LLC, 220 AD3d 745 [2d Dept 2023]; LG Funding, LLC, 181 AD3d 663). 
First, there is no provision in the Purchase Agreement for reconciliation and, indeed, there are provisions concerning Delinquent Receivables and Seller's obligation to make good on any deficiencies in the Purchaser's collection of the Delinquent Receivables, suggesting that Plaintiff did not undertake the risk of non-payment of the receivables and Seller was required to indemnify Plaintiff regarding any outstanding balances due on these receivables.[FN5]
As such, it appears that repayment was absolute — supporting that the Purchase Agreement was really a loan [*12]and not a cash advance agreement to which the criminally usury laws would not apply.
Second, the Purchase Agreement had a finite term of two years (see NYSCEF Doc. No. 43 at § 1, ¶ 3). In Amendment No. 1 to the Purchase Agreement, the term was extended for an additional 24 months so that Plaintiff could recover the outstanding receivables due in an amount totaling $858,983.94 from two of Seller's obligors (NYSCEF Doc. No. 44). Under the Amendment, Plaintiff was entitled to receive $3,000 a month from Seller's obligors and any deficiency in the $3,000 a month had to be paid by Seller (id. at § 2). Furthermore, Seller was obligated to pay the balance of the outstanding amount due at the end of the 24-month period (id.). Thus, under Amendment No. 1, at the end of the 24-month period, Seller was obligated to pay the amounts due under the purchased receivables (i.e., there was a time-constricted payment obligation). 
Third, it appears that Plaintiff was given some recourse in the event of Seller's bankruptcy. Section 15, paragraph 1(a) provides that the Purchase Agreement would be terminated immediately in the event Seller seeks relief under the Bankruptcy Code, and section 15 paragraph 4 provides that "[u]pon the effective date of a Termination, all obligations of Seller to Purchaser shall become immediately due and payable without further notice or demand irrespective of any maturity dates established prior thereto. In addition, all the terms, provisions and conditions hereof, including the security interests granted to Purchaser shall continue to remain in full force and effect until all Seller's obligations to Purchaser are paid in full" (NYSCEF Doc. No. 43 at § 15, ¶ 4; see LG Funding, LLC, 282 AD3d 664 [defendant's obligation to repay was absolute and not contingent on its actual accounts receivable as bankruptcy constituted an event of default entitling plaintiff to immediate full repayment of any of the unpaid purchased amount and to enforce the terms of the guaranty [FN6]
]). Section 15, second paragraph 4 states that "[t]ermination of this Agreement shall not terminate, extinguish, or remove any liens or security interests granted to Purchaser hereunder until Seller has fully paid and discharged any and all of its obligations to Purchaser" (id. at § 15, ¶ 4). 
Based on the foregoing, there are triable issues of fact over whether the Purchase Agreement was a loan and not a valid cash advance agreement and, as such, whether the amounts charged under the Purchase Agreement and the Note were criminally usurious.
Regarding the branch of Plaintiff's motion seeking dismissal of Menon's affirmative defenses, Menon has not put in any opposition regarding any of his affirmative defenses except for his Fourteenth Affirmative defense, which asserts the defense of usury. Therefore, that branch of Plaintiff's motion shall be granted, except with regard to Menon's Fourteenth Affirmative Defense.[FN7]

CONCLUSION
Accordingly, for the reasons stated and based upon the papers aforesaid, it is hereby
ORDERED that the branches of the motion by Plaintiff Blue Elephant Financing LLC seeking a default judgment against Defendants Gaspard & Menon Construction, LLC d/b/a Restoration Roofing and Jonathan Gaspard is granted; and it is further
ORDERED that Plaintiff's motion is granted to the extent that Plaintiff is entitled to: (1) a default judgment on its First Cause of Action against Defendant Gaspard & Menon Construction, LLC d/b/a Restoration Roofing and on its Fourth Cause of Action against Defendant Jonathan Gaspard in the principal amount of $215,927.12, together with interest at the rate of 18% per annum from December 1, 2024, Plaintiff's reasonable attorneys' fees, and its costs and disbursements (to be taxed by the Clerk of Court based on a Bill of Costs), (2) a default judgment on its Second Cause of Action against Defendant Jonathan Gaspard in the principal amount of $215,927.12, together with interest at the rate of 18% per annum from December 1, 2024, Plaintiff's reasonable attorneys' fees, and its costs and disbursements (to be taxed by the Clerk of Court based on a Bill of Costs); and it is further
ORDERED that the branch of Plaintiff's motion seeking summary judgment on its Fifth Cause of Action against Defendant Suneel Menon is denied; and it is further
ORDERED that the branches of Plaintiff's motion seeking summary judgment dismissing the affirmative defenses of Suneel Menon is granted in part and denied in part; and it is further
ORDERED that all of the affirmative defenses asserted by Defendant Suneel Menon, except for Defendant's Fourteenth Affirmative Defenses, are dismissed, but in all other respects, Plaintiff's motion is denied; and it is further
ORDERED that Plaintiff's counsel shall serve upon Defendants Gaspard & Menon Construction, LLC d/b/a Restoration Roofing and Jonathan Gaspard by certified mail, return receipt requested and by overnight delivery (next day delivery) at Defendants' last known addresses, and file with the Clerk of the Court: a copy of this Decision and Order with Notice of Entry, on or before December 5, 2025, and shall provide proof of service by not later than December 4, 2025; and it is further
ORDERED that counsel for Plaintiff shall, pursuant to the provisions of 22 NYCRR 202.48, serve and file a proposed judgment, with the amount to be awarded for interest, as well as the amount to be awarded for Plaintiff's attorneys' fees and costs and disbursements, left blank, noticed for settlement before this Court (and not the Clerk of the Court) on December 5, 2025 (no appearances required), together with an affirmation of legal services and supporting billing records; and it is further
ORDERED that counsel shall appear in-person for a Preliminary Conference in this matter on November 17, 2025 at 9:30 a.m. and shall submit a proposed Preliminary Conference Stipulation (https://www.nycourts.gov/LegacyPDFS/courts/9jd/civilCaseMgmt/12_6_PC.pdf) on [*13]or before 12 p.m. on November 14, 2025.
The foregoing constitutes the Decision and Order of this Court.
Dated: November 10, 2025
White Plains, New York
E N T E R:
HON. GRETCHEN WALSH, J.S.C.

Footnotes

Footnote 1:Plaintiff points out that the branches of its motion for a default judgment against the Defaulting Defendants should be granted as they did not respond to the Complaint and did not oppose the motion (Capobiano Reply Aff. at ¶ 5).

Footnote 2:In Navarro, the guarantor agreed that his "liability . . . under this Guaranty shall be absolute and unconditional irrespective of: (i) any lack of validity or enforceability of [the] agreement . . . ; . . . or (iv) any other circumstance which might otherwise constitute a defense available to, or a discharge of, the Seller [Agra Canada] or a guarantor" (Navarro, 25 NY3d at 494). In Citibank, N.A., defendants agreed "that the 'absolute and unconditional' nature of their guarantee was 'irrespective of (i) any lack of validity * * * of the * * * Restated Loan Agreement * * * or any other agreement or instrument relating thereto,' or '(vii) any other circumstance which might otherwise constitute a defense' to the guarantee" (Citibank, N.A., 66 NY2d at 95). Here, while Menon stated that he unconditionally and irrevocably guaranteed repayment, there were very specific defenses that were waived, none of which involved waiving a defense based either usury or even the lack of enforceability of the Note, generally.

Footnote 3:The Note provides that the amount due under the Note was $249,639.20, comprising of $87,040.04 due under a Restated Promissory Note as amended on July 22, 2023, and the $162,599.16 due pursuant under the Purchase Agreement (NYSCEF Doc. No. 23 at 1).

Footnote 4:Section 3, paragraph 2 provides that "Seller and Purchaser intend and agree that the transaction contemplated hereunder shall constitute a true sale, assignment and transfer of the Eligible Receivables to Purchaser, thereby providing Purchaser with the full risks and benefits of ownership. Notwithstanding the foregoing, in the event that the transaction contemplated hereunder is deemed to be a loan pursuant to the final, binding and non-appealable order of a court of competent jurisdiction, the aggregate amount of all amounts deemed to be interest hereunder and charged and collected by Purchaser is not intended to exceed the highest rate permissible under any applicable law" (NYSCEF Doc. No. 43 at § 3, ¶ 2).

Footnote 5:Under the Purchase Agreement, "'Delinquent Receivable' means, as of any date of determination a Receivable (i) for which the related Obligor is more than ninety (90) calendar days past due on all or any portion of any payment required to be made thereunder in an amount greater than $1.00, (ii) for which the related Obligor is more than ninety (90) calendar days past due from the purchase of the same on all or any portion of any payment required to be made thereunder in an amount greater than $1.00 (this being with regards to . . . a Receivable (iii) for which the related Obligor has become the subject of a proceeding under a Debtor Relief Law and the Seller or the Purchaser has actual knowledge of such proceeding" (NYSCEF Doc. No. 43 at 15). The Indemnity provision found in Section 8 provides, in pertinent part, that "Seller shall also indemnify Purchaser for any amounts owed to, and not received by, Purchaser under any Delinquent Receivables and any collection proceedings related to such Delinquent Receivables, and against any loss or liability, including attorney fees and costs, resulting from any acts or omissions of Seller or its agents or employees in connection with the services rendered or the sales thereof" (NYSCEF Doc. No. 43 at § 8; see also NYSCEF Doc. No. 43 at § 4, ¶¶ 5, 6[a]; § 15, ¶ 2).

Footnote 6:However, contrary to Menon's position, simply because there was a guaranty does not render the Purchase Agreement a loan as there was recourse against the guarantor in the event of the seller's bankruptcy (see Apollo Funding Co. v Dave Reilly Contr. LLC, 241 AD3d 1508; Bridge Funding Cap LLC v SimonExpress Pizza, LLC, 240 AD3d 1186 [4th Dept 2025]; True Bus. Funding, LLC, 239 AD3d 787; Samson MCA LLC v Joseph A. Russo M.D. P.C./IV Therapeutics PLLC, 219 AD3d 1126 [4th Dept 2023]; Principis Capital, LLC, 201 AD3d 752).

Footnote 7:That branch of Plaintiff's motion should also be granted because the affirmative defenses are legally insufficient as they fail to allege sufficient factual basis (see Bentivegna v Meenan Oil Co., Inc., 126 AD2d 506, 510 ["affirmative defenses (which) are 'totally bereft of factual data . . . are fatally deficient'"] [citations omitted]; Petracca v Petracca, 305 AD2d 566, 567 [2d Dept 2003] ["Defenses which merely plead conclusions of law without supporting facts are insufficient and should be stricken"]; see also Falk v Gallo, 18 Misc 3d 1146[A], 859 NYS2d 894 [Sup Ct, Nassau County 2008]).